DEBORAH CONNOR, Chief
Money Laundering and Asset Recovery Section (MLARS)
MARY BUTLER
Chief, International Unit
WOO S. LEE
Deputy Chief, International Unit
BARBARA Y. LEVY, Trial Attorney
JOSHUA L. SOHN, Trial Attorney
Criminal Division
United States Department of Justice
   1400 New York Avenue, N.W., 10th Floor
   Washington, D.C. 20530
   Telephone: (202) 514-1263
   Email:  Joshua.Sohn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ALL FUNDS HELD IN ESCROW BY CLYDE & CO. IN THE UNITED KINGDOM AS DAMAGES OR RESTITUTION IN *PETROSAUDI V. PDVSA* UNCITRAL ARBITRATION,<br><br>　　　　　Defendant *in rem*. | No. 2:20-cv-8466-DSF-PLA<br><br>**EX PARTE APPLICATION FOR ISSUANCE OF WARRANT FOR ARREST *IN REM***<br><br>[Proposed Warrant for Arrest in Rem Lodged Concurrently Herewith] |

　　　Plaintiff United States of America (the "government") hereby applies for the issuance of the proposed Arrest Warrant *in Rem* lodged contemporaneously herewith. The arrest warrant *in rem* will allow the government to take the defendant assets into custody so that they may be retained by the United States Marshals Service during the pendency of this action. This application is made pursuant to Rule G(3)(b)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), Federal Rules of Civil

Procedure, and is supported by the attached memorandum of points and authorities and the Verified Complaint in this action.

Because the Court will not acquire jurisdiction over the defendant assets until they are arrested, the ex parte notice provisions of Rule 7-19.1 of the Local Rules of Practice for the Central District of California do not apply.

Dated: September 21, 2020    Respectfully submitted,

DEBORAH CONNOR
Chief, MLARS

 */s/ Joshua Sohn*
WOO S. LEE
Deputy Chief, MLARS
JOSHUA L. SOHN
BARBARA Y. LEVY
Trial Attorneys, MLARS

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION AND SUMMARY OF PROBABLE CAUSE**

On September 16, 2020, plaintiff United States of America (the "government") filed a verified complaint in the civil forfeiture action against all funds held in escrow by Clyde & Co. in the United Kingdom as damages or restitution in the 2017 UNCITRAL arbitration between PetroSaudi Oil Services (Venezuela) Ltd. and PDVSA Servicios S.A. *et al.*, as more particularly described in Attachment A ("Defendant Assets"). Generally, the government, when initiating a civil *in rem* judicial forfeiture action, has already taken the defendant property into its custody. Where, as here, it has not, the government must ask the Court to issue a warrant for arrest *in rem* to allow the government to take the property into custody, where it will remain subject to the Court's jurisdiction during the pendency of the action.

As detailed in Section VI(WW) (¶¶ 1071-1079) of the Verified Complaint, and summarized below, there is probable cause that the Defendant Assets here are subject to forfeiture.

**II. THE ARREST WARRANT MUST BE ISSUED UPON A FINDING OF PROBABLE CAUSE**

Where the government commences a civil forfeiture action against a defendant asset that is already in government custody, the Clerk of the Court "must issue a warrant to arrest the property." Supplemental Rule G(3)(b)(i). The Clerk's warrant for arrest *in rem*

3

allows the government to retain custody of the defendant asset, and execution of the warrant perfects the Court's *in rem* jurisdiction over the asset. *Ventura Packers, Inc. v. F/V Kathleen*, 424 F.3d 852, 853 (9th Cir. 2005).

Where the government commences a civil forfeiture action against an asset that is not in government custody or subject to a judicial restraining order at the time of filing, "the Court – on finding probable cause – must issue a warrant to arrest the property." Supplemental Rule G(3)(b)(ii). The sole question is whether the allegations of the verified complaint, taken as true, are sufficient to establish probable cause to believe that, based on the totality of the circumstances, and with a "common sense view to the realities of normal life," there is a "fair probability" that the defendant asset is subject to forfeiture on the grounds alleged. *See United States v. Real Property at 874 Gartel Drive*, 79 F.3d 918, 922 (9th Cir. 1996) (the probable cause standard as applied to civil forfeiture seizures "is similar to that required to obtain a search warrant"); *United States v. Daccarett*, 6 F.3d 37, 50 (2d Cir. 1993); *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 876 (10th Cir. 1992) (test for probable cause is the same as applies in other arrests, searches, and seizures).

The warrant is to be issued ex parte, as the giving of notice to potential claimants of the defendant asset occurs only after the warrant has been executed. This is so because the Court does not

4

obtain jurisdiction over the defendant asset until it is arrested. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679-80 (1974) (seizure of property for forfeiture is like the execution of a search warrant or the seizure of evidence in a criminal case, acts which must necessarily occur, in most cases, without prior notice to the owner); *United States v. One Oil Painting*, 362 F. Supp 2d 1175, 1183-84 (C.D. Cal. 2005).  The perfection of the Court's jurisdiction over the defendant asset and the giving of notice to potential claimants are separate concepts.  *Id.*  Upon issuance, the warrant is to be delivered to a person authorized to execute it, who may be "a marshal or any other United States officer or employee," and must be executed "as soon as practicable."  Supplemental Rule G(3)(c)(i) and (ii).  Here, the warrant will be executed by either a Deputy U.S. Marshal or a Special Agent of the Federal Bureau of Investigation.

In this action, probable cause exists to support the issuance of an arrest warrant for the Defendant Assets, which are in the custody of Clyde & Co. in the United Kingdom.  *See* Complaint, Section VI(WW) (¶¶ 1071-1079).

More specifically, as discussed in Section II(C) of the Complaint (¶¶ 50-63), 1MDB contributed $1 billion in 2009 to purportedly fund a joint venture with PetroSaudi to exploit energy assets in Turkmenistan and Argentina.  However, as discussed in Section II(D) of the Complaint (¶¶ 64-89), approximately $700 million of this $1 billion investment was fraudulently diverted to a dummy

5

account and used to purchase assets for the conspirators' personal gratification.

The remaining $300 million was insufficient to fund the joint venture that had been proposed to 1MDB. Instead, it was used to purchase two secondhand and aging drillships, the Songa Saturn and Neptune Discoverer (which were built in 1983 and 1977, respectively). (Complaint at ¶ 1072.)

Lacking any remaining working capital, PetroSaudi entered into a contract with the Venezulan oil company Petroleos de Venezuela, S.A. ("PDVSA") for drilling rights in Venezuela. As part of that contract, PetroSaudi obtained a line of credit from PDVSA, which was eventually drawn down by more than $300 million. (*Id.* at ¶ 1073.)

Substantially zero oil was ever produced under the Venezuelan drilling contract. PetroSaudi and PDVSA instead entered into Paris-based arbitration over the failed drilling venture. The arbitration covered, *inter alia*, the fate of the funds that PetroSaudi had drawn down from the PDVSA line of credit. (*Id.* at ¶ 1074.)

Meanwhile, the conspirators who had convinced 1MDB to contribute $1 billion to the joint venture – and who had then siphoned off $700 million – needed to conceal the $700 million misappropriation and the drastic de-capitalization of the joint venture. (*Id.* at ¶ 1075.) Thus, they attempted to inflate the reported value of 1MDB's investment in the joint venture. (*Id.*) They tried to achieve this end by restructuring 1MDB's investment in the joint venture several

times, ultimately converting that interest into an opaque and illiquid asset, the value of which could not be easily verified by auditors and others.  (*Id.*)  Thereafter, they orchestrated a fraudulent valuation of the assets underlying the investment to massively inflate their value and to create the false impression that 1MDB's investment in the joint venture had generated a profit, when in fact it had been diminished significantly through misappropriation.  (*Id.*)

Thus, the actual joint venture (as represented by the two drillships and the PetroSaudi-PDVSA contract) constituted the proceeds of fraud.  (*Id.* at ¶ 1076.)  It was a pale shadow of the Turkmenistan-Argentina energy project for which 1MDB had been fraudulently induced to invest $1 billion.  (*Id.*)  The conspirators falsely represented to 1MDB that the $1 billion would be used to fund energy projects in Turkmenistan and Argentina – but due to misappropriation of the bulk of this money, the diminished and decapitalized joint venture instead merely purchased two aging drillships and entered into the aforementioned contract with PDVSA.  (*Id.*)

The joint venture also constituted a vehicle for money laundering.  As discussed in Paragraph 1075 of the Complaint, the conspirators performed financial gymnastics in valuing this joint venture to conceal its diminished scope and the concomitant misappropriation of the $700 million.

7

In sum, the joint venture itself, as well as the assets it obtained, was the proceeds of fraud and a vehicle to launder the funds misappropriated from 1MDB.  As described above, the joint venture used the funds it obtained fraudulently from 1MDB to acquire drillships which were then used to, among other things, obtain the more than $300,000,000 from the PDVSA line of credit.  These funds constitute the Defendant Assets in this case.

**III. CONCLUSION**

In the Verified Complaint, the government seeks forfeiture of the Defendant Assets pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), in connection with violations of 18 U.S.C. §§ 1343 (wire fraud), 1956 and 1957 (money laundering), 2314 (international transportation or receipt of stolen or fraudulently obtained property), 2315 (receipt of stolen money), and a conspiracy to commit such offenses.  The allegations of the Verified Complaint are sufficient to establish probable cause to believe that the Defendant Assets are subject to

//

//

//

forfeiture. The government respectfully requests that the Court issue the proposed Warrant for Arrest *in Rem*, so that the government may seize the Defendant Assets and commence providing notice.

Dated: September 21, 2020         Respectfully submitted,

                                  DEBORAH CONNOR
                                  Chief, MLARS

                                   */s/ Joshua L. Sohn*
                                  JOSHUA L. SOHN
                                  Trial Attorney, MLARS

                                  Attorney for Plaintiff
                                  UNITED STATES OF AMERICA