Scott J. Fishwick (CA SBN 308661)
sfishwick@bakerlaw.com
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Ste. 1400
Los Angeles, CA 90025
Telephone:  310.820.8800
Facsimile:   310.820.8859

David B. Rivkin, Jr. (*pro hac vice*)
drivkin@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone:  202.861.1500
Facsimile:   202.861.1783

(additional counsel listed after caption)

*Attorneys for Claimant*
*PetroSaudi Oil Services (Venezuela) Ltd.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ALL FUNDS HELD IN ESCROW BY CLYDE & CO. (OR SUCCESSOR INSTITUTION) IN THE UNITED KINGDOM AS DAMAGES OR RESTITUTION IN *PETROSAUDI v. PDVSA* UNCITRAL ARBITRATION,<br><br>        Defendant. | Case No.: 2:20-cv-08466-DSF-PLA<br>Hon. Dale S. Fischer<br><br>**CLAIMANT PETROSAUDI OIL SERVICES (VENEZUELA) LTD.'S RESPONSE IN OPPOSITION TO THE UNITED STATES'S RENEWED *EX PARTE* APPLICATION FOR ISSUANCE OF ARREST WARRANT *IN REM*** |

1    OF COUNSEL:

2    Lee A. Casey (CA SBN 119568)
     lcasey@bakerlaw.com
3    Mark W. DeLaquil
     mdelaquil@bakerlaw.com
4    Jonathan R. Barr (*pro hac vice*)
     jbarr@bakerlaw.com
5    Elizabeth Price Foley
     efoley@bakerlaw.com
6    Kendall E. Wangsgard
     kwangsgard@bakerlaw.com
7    BAKER & HOSTETLER LLP
     1050 Connecticut Avenue, NW
8    Washington, D.C. 20036
     Telephone:  202.861.1500
9    Facsimile:   202.861.1783

10   Jonathan B. New (*pro hac vice*)
     jnew@bakerlaw.com
11   BAKER & HOSTETLER LLP
     45 Rockefeller Plaza
12   New York, NY 10111
     Telephone:  212.589.4200
13   Facsimile:   212.549.4201

14   *Attorneys for Claimant*
     *PetroSaudi Oil Services (Venezuela) Ltd.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

I.      THE COURT'S ENFORCEMENT JURISDICTION DOES NOT EXTEND TO A *RES* POSSESSED AND CONTROLLED BY A FOREIGN COURT ................................................................ 2

II.     SOVEREIGN IMMUNITY UNDER THE FSIA BARS EXECUTION OF AN ARREST WARRANT *IN REM* AGAINST A *RES* POSSESSED AND CONTROLLED BY A FOREIGN COURT ....................................................................... 6

III.     THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE GOVERNMENT CANNOT CARRY ITS BURDEN OF ESTABLISHING A "SUBSTANTIAL LIKELIHOOD" OF REDRESSABILITY ............................................ 9

IV.     THE PRIOR EXCLUSIVE JURISDICTION DOCTRINE APPLIES ....................................................................................... 12

CONCLUSION .................................................................................................. 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ASARCO, Inc. v. Kadish*,
490 U.S. 605 (1989) ................................................................. 10, 11

*Berg v. Kingdom of the Netherlands*,
No. 2:18-cv-3123, 2020 WL 2829757 (D.S.C. Mar. 6, 2020) .......................... 10

*Cardenas v. Smith*,
733 F.2d 909 (D.C. Cir. 1984).......................................................... 11

*Carney v. Adams*,
141 S. Ct. 493 (2020) .................................................................. 12

*Chesley v. Union Carbide Corp.*,
927 F.2d 60 (2d Cir. 1991) ............................................................ 12

*Cicero v. Mnuchin*,
857 F.3d 407 (D.C. Cir. 2017)......................................................... 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................... 10

*Matter of Cmty. Home Fin. Servs., Inc.*,
990 F.3d 422 (5th Cir. 2021)............................................................ 9

*Competitive Enter. Inst. v. FCC*,
970 F.3d 372 (D.C. Cir. 2020)......................................................... 11

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991) ........................................................... 6

*Dailey v. Nat'l Hockey League*,
987 F.2d 172 (3d Cir. 1993) ........................................................... 12

*Davy v. Star Packaging Corp.*,
517 Fed. App'x 874 (11th Cir. 2013)..................................................... 9

*Dellums v. U.S. Nuclear Reg. Comm'n*,
863 F.2d 968 (D.C. Cir. 1988)......................................................... 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

*Dep't of Commerce v. NY*,
  139 S. Ct. 2551 (2019) ............................................................................ 10

*Drexel Burnham Lambert Grp., Inc. v. Comm. of Receivers for
  Galadari*,
  12 F.3d 317 (2d Cir. 1993) .......................................................................... 8

*In re Eisen*,
  31 F.3d 1447 (9th Cir. 1994) ...................................................................... 8

*Fabe v. Aneco Reins. Underwriting Ltd.*,
  784 F. Supp. 448 (S.D. Ohio 1991) ............................................................ 8

*Fed. Trade Comm'n v. Compagnie de Saint-Gobain-Pont-a-Mousson*,
  636 F.2d 1300 (D.C. Cir. 1980) ............................................................ 3, 5

*Finanz AG Zurich v. Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999) ........................................................................ 8

*Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*,
  602 F. Supp. 1378 (S.D.N.Y. 1985) ............................................................ 8

*Kiobel v. Royal Dutch Petroleum Co.*,
  569 U.S. 108 (2013) ................................................................................ 4, 6

*Latelle v. Autozoners LLC*,
  No. 2:11-cv-00591, 2012 WL 1315267 (D. Nev. Mar. 27, 2012) ...................... 9

*Levine v. Vilsack*,
  587 F.3d 986 (9th Cir. 2009) .................................................................... 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................ 10, 11

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
  436 F. Supp. 2d 1095 (C.D. Cal. 2006) ...................................................... 9

*Murray v. The Schooner Charming Betsy*,
  6 U.S. (2 Cranch) 64 (1804) ...................................................................... 5

*Princess Lida of Thurn and Taxis, et al. v. Thompson*,
  305 U.S. 456 (1939) ................................................................................ 13

*Ry. Labor Execs. Ass'n v. Dole*,
  760 F.2d 1021 (9th Cir. 1985) .................................................................. 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ................................................................... 6

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ................................................................... 7

*SEC v. Banner Fund Int'l*,
  211 F.3d 602 (D.C. Cir. 2000) ................................................ 12

*In re Seizure of Approx. 28 Grams of Marijuana*,
  278 F. Supp. 2d 1097 (N.D. Cal. 2003) ........................... 1, 12, 13

*Siderman de Blake v. Republic of Argentina*,
  965 F.2d 699 (9th Cir. 1992) ..................................................... 4

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
  968 F.3d 738 (9th Cir. 2020) ................................................... 12

*Smagin v. Yegiazaryan*,
  733 Fed. App'x 393 (9th Cir. 2018) ........................................ 12

*Société Nationale Industrielle Aérospatiale v. Dist. Court*,
  482 U.S. 522 (1987) ................................................................... 4

*State Engineer of Nevada v. South Fork Band of the Te-Moak Tribe of W. Shoshone Indians*,
  339 F.3d 804 (9th 2003) .......................................................... 12

*The Schooner Exchange v. McFaddon*,
  11 U.S. (7 Cranch) 116 (1812) ................................................. 4

*Trump v. Comm. on Ways & Means*,
  415 F. Supp. 3d 38 (D.D.C. 2019) .......................................... 10

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) ................................................... 8

*United States v. Blanco*,
  861 F.2d 773 (2d Cir. 1988) ...................................................... 4

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765 (2000) ................................................................. 10

*Willess v. United States*,
  560 Fed. App'x 762 (10th Cir. 2014) ........................................ 9

iv

*Williams v. Connolly*,
No. 17-cv-1631, 2017 WL 5479508 (D.N.J. Nov. 15, 2017) ........................... 10

*Williams v. Wisconsin*,
336 F.3d 576 (7th Cir. 2003) .................................................................. 3

**Statutes**

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1603, 1604 .................................. 7

Proceeds of Crime Act, 2002 (Eng.) ........................................................... 6

**Rules**

Civil Procedure Rules, 1998, S.I. 1998/3132, Pt. 64 (U.K.) ..................................... 9

Fed. R. Civ. P. 17(a) .............................................................................. 7

Fed. R. Civ. P. 19(b) .............................................................................. 6

Practice Direction 64A-Estates, Trusts and Charities, Title 1 Claims
Relating to the Administration of Estates and Trusts (U.K.) ........................... 13

Supp. R. G(3)(c)(iv) ........................................................................... 4, 5

**Other Authorities**

14 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal
Practice and Procedure* § 3631 (3d ed. 1998) ..................................... 12

Restatement (Fourth) of Foreign Relations Law ............................................. 3

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

### INTRODUCTION

2    The Court dismissed the government's first amended complaint on March 9,

3  2021. It also recalled the arrest warrant *in rem* and granted leave for the government

4  to file a second amended complaint ("SAC") by March 29, 2021. ECF No. 52. The

5  government filed its SAC, ECF No. 53, on March 29, 2021, and filed a Renewed *Ex*

6  *Parte* Application for Issuance of Warrant for Arrest *In Rem* on the following day.

7  ECF No. 54 (the "Application"). Upon motion, ECF No. 55, the Court granted

8  Claimant's request to set a briefing schedule on the Application on April 8, 2021,

9  ordering Claimant to respond to the government's *ex parte* Application by April 19,

10  2021 (the same day on which Claimant's response to the SAC is due) and the

11  government to respond by April 26, 2021.[1] ECF No. 58.

12    The Court should deny the Application as it lacks subject matter jurisdiction.

13  It is axiomatic that "[a] federal court cannot issue warrants in furtherance of

14  proceedings over which there is no federal subject matter jurisdiction." *In re*

15  *Seizure of Approx. 28 Grams of Marijuana*, 278 F. Supp. 2d 1097, 1107 (N.D. Cal.

16  2003). Here, the Court lacks subject matter jurisdiction for four reasons: (1) the

17  Court lacks enforcement jurisdiction to issue a compulsory order requiring seizure

18  of a *res*[2] that is possessed and controlled by a non-party foreign court; (2) even if

19  the Court issues such a compulsory order, it cannot be executed against the foreign

20  court, which is "immune from the jurisdiction of the courts of the United States"

21  pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604; (3)

22

23  ───────────────

[1] Claimant's response to the SAC—a motion to dismiss—is of course being filed

24  separately and concurrently with this Response.

[2] The SAC defines the *res* as "all funds held in escrow by Clyde & Co. in the United

25  Kingdom as damages or restitution in the UNCITRAL arbitration between PetroSaudi Oil

26  Services (Venezuela) Ltd. and PDVSA Servicios S.A. *et al*. . . . " SAC ¶ 2; ECF No. 53-1.

The government specifically "brings this action against the aforementioned funds . . .

27  whether these funds are held in escrow by Clyde & Co. or held in some other account

28  controlled by a UK court." *Id*. Attachment A of the SAC states that the *res* has a "value of

approximately $329 million as of March 2021." *Id*. at Att. A.

1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

even if sovereign immunity does not apply, the government cannot establish a "substantial likelihood" of redressability because its requested seizure of the *res* depends upon the discretion of the UK court, a third party not before or within control of the Court, which has exclusive possession and control over the *res*; and (4) mandatory application of the Prior Exclusive Jurisdiction Doctrine ("PEJ") deprives the Court of jurisdiction.

## I.     THE COURT'S ENFORCEMENT JURISDICTION DOES NOT EXTEND TO A *RES* POSSESSED AND CONTROLLED BY A FOREIGN COURT

The government's Application seeks the issuance of an arrest warrant *in rem* and consequent seizure thereof by federal officials. *See* Proposed Warrant for Arrest in Rem, ECF 54-1, at 2 ("YOU ARE HEREBY COMMANDED . . . to arrest and seize the Defendant Assets."). The *res* to be seized by federal officials is, however, currently located in the United Kingdom and both possessed and controlled by a British court. Specifically, on March 23, 2021—six days *before* the government filed the SAC—the High Court of Justice, Business and Property Courts of England and Wales issued a mandatory order directing that the prior British escrow agent of the *res*, Clyde & Co., "shall forthwith" convert the *res* from U.S. dollars to British pounds ("GBP") "without overseas transfer of funds" and then "immediately transfer" the *res* "to the Court Funds Office without any overseas clearing or overseas transfer . . . ." *See* Notice of Decision, Att. A, ECF No. 57-1 ¶ 1(a)-(b) ("March 23, 2021 Order"). The UK court also ordered that, upon such transfer, Clyde & Co. "will cease to be the trustee and escrow manager" of the *res* which "will be held by the Court Funds Office subject to the Orders below and further Orders of this Court . . . ." *Id*. ¶ 3.

The government does not contest that the *res* is located overseas or that the UK court entered its March 23, 2021 Order before the SAC was filed. Instead, it asserts that "the transfer of the *res* will not take effect until the UK court writes up

2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  its decision in the coming days (meaning that Clyde & Co. still possesses the *res* at

2  present)." ECF No. 56, at 3. This is incorrect. As Claimant previously submitted,

3  the UK court's order "is in effect and no other decision is necessary or expected

4  from the English court." ECF No. 57, at 3. Clyde & Co. has complied with that

5  order and the funds are presently possessed and controlled by the UK court. *See*

6  Declaration of James Lewis QC, ¶ 4 ("Lewis Decl.") attached hereto.

7        A District Court's order to seize property located overseas—as the

8  Application seeks here—is an exercise of its enforcement jurisdiction. Restatement

9  (Fourth) of Foreign Relations Law, pt. IV, ch. 3, intro. note (2018) ("Jurisdiction to

10  enforce concerns the authority of a state to exercise its power or compel compliance

11  with the law. Common examples include . . . the seizure of property.") (internal

12  citation omitted) ("Restatement"); *id*. at § 431 ("Courts in the United States have

13  understood enforcement jurisdiction to encompass compelling compliance with law

14  through the use of force and the performance of other coercive governmental

15  functions. Examples include . . . the seizure of property."). *See also Fed. Trade*

16  *Comm'n v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1316

17  (D.C. Cir. 1980) (subpoena *duces tecum* invokes court's enforcement jurisdiction).

18        As the D.C. Circuit noted in *Saint-Gobain*, "enforcement jurisdiction by and

19  large continues to be strictly territorial," *id*., and the Restatement reflects this rule:

20  "Both U.S. practice and customary international law distinguish between

21  enforcement in a state's own territory, which is unproblematic, and enforcement in

22  the territory of another state, which requires the consent of that other state."

23  Restatement, *supra*, pt. IV, ch. 3, intro. note (2018). Thus, "[t]he United States

24  generally exercises jurisdiction to enforce within the territory of the other states

25  only with the consent of the other states." *Id*. at § 431 cmt. b. As the Seventh

26  Circuit put it, "[o]nly with the permission of the foreign country in question may

27  the law enforcement officers of one country exercise powers in another one."

28  *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003); *accord The Schooner*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

*Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute. It is susceptible of no limitation not imposed by itself. . . . All exceptions, therefore, to the full and complete power of a nation within its own territories, must be traced up to the consent of the nation itself. They can flow from no other legitimate source.") *superseded by statute* as stated in *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 705 (9th Cir. 1992); *Société Nationale Industrielle Aérospatiale v. Dist. Court*, 482 U.S. 522, 557 (1987) (Blackmun, J., concurring in part and dissenting in part) ("[E]ach state has a monopoly on the exercise of governmental power within its borders and no state may perform an act in the territory of a foreign state without consent."); *United States v. Blanco*, 861 F.2d 773, 779 (2d Cir. 1988) ("The United States has no right to enforce its laws in another country without the country's consent or acquiescence.").

As the Supreme Court recognized in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), the principles of international comity and "unwanted judicial interference in the conduct of foreign policy" creates a presumption that "constrain[s] courts [from] exercising their power" of enforcement within the territory of another sovereign unless Congress has made its intention to do so "clear." *Id*. at 116-17, 124-25. Here, however, Congress has made it abundantly clear that it does *not* wish to dispense with the territoriality principle of customary international law in forfeiture cases. Specifically, Rule G(3)(c)(iv) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture, which addresses "Forfeiture Actions *In Rem*," echoes customary international law and its territoriality principle by declaring, "[i]f executing a warrant on property outside the United States is required, the warrant may be transmitted to an appropriate authority for serving process where the property is located."[3] Supp. R. G(3)(c)(iv).

---

[3] Although Supplemental Rule G(3)(c)(iv) contains the word "may," the Advisory Committee notes accompanying its adoption make clear that if the U.S. wishes to attempt

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  This would ordinarily require transmitting the warrant to the UK National Crime

2  Agency (NCA), requesting that the NCA serve the warrant on the current custodian

3  for the funds.

4        The present Application, however, seeks a warrant that, if properly executed,

5  seeks to seize the *res* not from a *private party*, but rather a *sovereign entity*—

6  namely, the UK court. This is a remarkably aggressive assertion of U.S.

7  enforcement jurisdiction and consequently, the NCA is no longer the "appropriate

8  authority" whose consent must be sought under Supplemental Rule G(3)(c)(iv).

9  Instead, as the Lewis Declaration indicates, the "appropriate authority" whose

10  "consent" will be necessary to comply with customary international law is the *UK*

11  *court* that presently possesses and controls the *res*. Lewis Decl. ¶¶ 7, 10, 30, 34.

12        Thus, if the government wishes to assert a claim to the Defendant Funds now

13  held by the UK court, it must apply to that court for an order transferring the *res* to

14  its possession and control. A U.S. court cannot, consistent with customary

15  international law, simply order the UK court to turn over the *res*, or to hold it for

16  the benefit of the United States. The UK court is not a party to this litigation, and

17

18

---

19  service of an arrest warrant *in rem* on property located outside the U.S., it must seek the

20  cooperation of the appropriate foreign authority: "Subparagraph (iv) reflects the
uncertainty surrounding service of an arrest warrant on property not in the United States.

21  It is not possible to identify in the rule the appropriate authority for serving process in all
other countries. Transmission of the warrant to an appropriate authority, moreover, does

22  not ensure that the warrant will be executed. The rule *requires only that the warrant be*

23  *transmitted to an appropriate authority*." Supp. R. G(3)(c)(iv), advisory committee's note
(2006) (italics added). Moreover, under the Supreme Court's *Charming Betsy* canon,

24  "courts are bound wherever possible to construe strictly federal statutes conferring subject
matter jurisdiction . . . to avoid possible conflicts with contrary principles of international

25  law." *Saint-Gobain*, 636 F.2d at 1323; *see also Murray v. The Schooner Charming Betsy*,

26  6 U.S. (2 Cranch) 64, 118 (1804) ("[A]n act of Congress ought never to be construed to
violate the law of nations if any other possible construction remains"). Pursuant to the

27  *Charming Betsy* doctrine, therefore, Supplemental Rule G(3)(c)(iv) must be construed
consistent with customary international law and thus require consent of the foreign

28  sovereign (where the *res* is located) to execute an arrest warrant *in rem*.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT'S RESPONSE IN OPPOSITION TO RENEWED *EX PARTE* APPLICATION FOR ARREST
WARRANT *IN REM*                                                   2:20-CV-08466-DSF-PLA

1  this Court does not have *in personam* or ancillary jurisdiction over it due to

2  sovereign immunity (as elaborated in Section II below).[4]

3     If the U.S. government wishes to seize the *res*, therefore, it must seek the

4  consent of the UK court by seeking the assistance of the NCA to pursue its claim.

5  Indeed, there are multiple other potential claimants to this *res*—including other

6  sovereigns such as Malaysia and Switzerland—who may wish to assert claims. UK

7  law provides a basis for presenting such claims under the Proceeds of Crime Act

8  ("POCA"), which "make[s] provision to give effect to overseas requests and orders

9  made where property is found or believed to be obtained through criminal conduct,

10 and for connected purposes." Proceeds of Crime Act, 2002, c. 29 preamble (Eng.).

11 *See also* Lewis Decl. ¶¶ 24-34.

12    Thus, the Court cannot grant the present Application, thereby exercising

13 subject matter jurisdiction in a manner inconsistent with customary international

14 law, in light of Congress's clear intent to conform forfeiture actions thereto. *Kiobel*,

15 569 U.S. at 116-17, 124-25.

16 **II.    SOVEREIGN IMMUNITY UNDER THE FSIA BARS EXECUTION**

17 **OF AN ARREST WARRANT *IN REM* AGAINST A *RES* POSSESSED**

18 **AND CONTROLLED BY A FOREIGN COURT**

19    Even if the Court does have enforcement jurisdiction to issue an arrest

20 warrant *in rem* without the consent of the UK court, it nonetheless lacks subject

21 matter jurisdiction to do so due to sovereign immunity under the FSIA, which

22

23 ─────────────

24 [4] As the entity possessing and controlling the *res*, the UK court is likely an indispensable party, necessitating dismissal under Federal Rule of Civil Procedure 19(b) of any proceeding affecting an interest in the *res*. *See Republic of Philippines v. Pimentel*, 553

25 U.S. 851, 864-67 (2008) (sovereign claiming ownership of *res* subject to *in rem* interpleader proceeding is indispensable party; judicial seizure of property is affront to

26 sovereign's dignity and "[a] case may not proceed when a required-entity sovereign is not amenable to suit" under the FSIA."). *See also CP Nat'l Corp. v. Bonneville Power*

27 *Admin.*, 928 F.2d 905, 911-12 (9th Cir. 1991) (absence of necessary party may be raised

28 *sua sponte* or by the parties "at any stage in the proceeding.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT'S RESPONSE IN OPPOSITION TO RENEWED *EX PARTE* APPLICATION FOR ARREST
WARRANT *IN REM*                                                    2:20-CV-08466-DSF-PLA

declares that a "foreign state shall be immune from the jurisdiction of the courts of the United States . . . ." 28 U.S.C. § 1604. *Accord Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (FSIA deprives federal court of subject matter jurisdiction over any claim against a foreign state).

The defendant in this civil forfeiture action is the *res*, not the UK or its court. However, the current Application—for an arrest warrant *in rem*—commands U.S. officials to seize the *res*, regardless of who possesses it. Because the *res* is in the possession and control of the UK court, which is a vital component of the UK itself, granting the present Application will, by definition, exercise the Court's subject matter jurisdiction over property possessed and controlled by a foreign sovereign. FSIA forbids this. Indeed, when it comes to an exercise of jurisdiction over the *res*, the "real party in interest" is presently the UK court, which possesses it and controls its disposition. *See* ECF No. 57-1 ¶ 3 (March 23, 2021 Order stating that the res "will be held by the Court Funds Office subject to the Orders below and further orders of this Court"). While the Claimant is given permission to apply to the UK court to vary or amend the court's order requiring payment of ongoing business expenses and attorneys' fees, this does not alter the fact that *all disbursements* of the *res* are under the exclusive control of the UK court. *Id*. ¶¶ 4-5.

Federal courts have consistently recognized that when a sovereign is the real party in interest,[5] the proceeding should be considered as against the sovereign itself under the FSIA. This is true even in *in personam* proceedings filed against private businesses. Specifically, if an *in personam* action is brought against a private business that enters liquidation under foreign law, courts routinely conclude

---

[5] Federal Rule of Civil Procedure 17(a) requires that action "must be *prosecuted* in the name of the real party in interest." Fed. R. Civ. P. 17(a) (italics added). Rule 17(a) thus recognizes that, to have standing, the *plaintiff* must be the real party in interest. Rule 17(a) does not mention *defendants* but, as elaborated in the text, Article III, section 2's redressability requirement ensures that a civil proceeding is brought against a *defendant* capable of providing redress for plaintiff's injuries.

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

that FSIA dismissal is required because the sovereign-appointed liquidator is an "agency or instrumentality" of the foreign sovereign under the FSIA, 28 U.S.C. § 1603(b), and thus entitled to sovereign immunity, because the liquidator exclusively possesses and controls the business. *See, e.g., Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245 (2d Cir. 1999) (parties' assumption that foreign liquidator is "real party in interest" and "agency or instrumentality of a foreign state" under FSIA is "supported by the record"); *Drexel Burnham Lambert Grp., Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 324 (2d Cir. 1993) (district court correctly concluded that Dubai liquidation committee was instrumentality of the Emirate and suit barred by sovereign immunity); *Fabe v. Aneco Reins. Underwriting Ltd.*, 784 F. Supp. 448, 450-51 (S.D. Ohio 1991) (suit barred under FSIA because Bermudan liquidator is agency or instrumentality of Bermuda under FSIA); *Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*, 602 F. Supp. 1378, 1382 (S.D.N.Y. 1985) (Hong Kong liquidator is real party in interest).

Given that the FSIA bars *in personam* proceedings against a private business-defendant when it undergoes liquidation by a sovereign-appointed liquidator, the logic is even more compelling that the FSIA bars *in rem* proceedings against a *res*-defendant that is under the exclusive possession and control of a foreign court. The UK court, unlike a liquidator, is not merely an "agency or instrumentality" of the sovereign, but the *sovereign itself*. Like a liquidator, the UK court exclusively possesses and controls the disposition of the defendant. Moreover, like a liquidator, any claim asserted against the defendant must be presented to the UK court for orderly resolution.

Indeed, in the analogous context of an *in rem* bankruptcy proceeding, the Ninth Circuit and numerous other federal courts hold that a bankruptcy trustee is the real party in interest regarding claims for or against the defendant-*res* (bankruptcy estate). *Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004); *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994); *Matter of Cmty. Home Fin. Servs.*,

8

*Inc.*, 990 F.3d 422, 427 (5th Cir. 2021); *Willess v. United States*, 560 Fed. App'x 762, 764 (10th Cir. 2014); *Davy v. Star Packaging Corp.*, 517 Fed. App'x 874, 876 (11th Cir. 2013); *Latelle v. Autozoners LLC*, No. 2:11-cv-00591, 2012 WL 1315267, at *2 (D. Nev. Mar. 27, 2012). *See also Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) (trustee is real party in interest under Federal Rule of Civil Procedure Rule 17(a)). Here, much like a bankruptcy trustee, the UK court has taken exclusive possession and control over the *res*. Tellingly, it has done so pursuant to UK's Civil Procedure Rules, Part 64, which governs "Claims Relating to the Administration of Estates and Trusts." Civil Procedure Rules, 1998, S.I. 1998/3132, Pt. 64 (U.K.). Pursuant to Practice Direction 64A, the UK court has broad authority to oversee the administration of a trust, including ordering an existing trustee to "pay into court money which he holds in that capacity . . . ." *Id*. at Practice Direction 64A, ¶ 1(2)(a)(ii). That is what the UK court did here; it ordered the then-existing trustee, Clyde & Co., to "immediately transfer" the *res* into the "Court Funds Office" and declared that "upon the transfer . . . to the Court Funds Office . . . the Defendant [Clyde & Co.] *will cease to be the trustee and escrow manager*" of the *res*. ECF No. 57-1, ¶¶ 1(b), 3 (italics added).

Accordingly, the UK court is now the real party in interest regarding the *res* and, as a sovereign entity with exclusive possession and control over the *res*, an arrest warrant *in rem* is barred by sovereign immunity under the FSIA.

## III.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE GOVERNMENT CANNOT CARRY ITS BURDEN OF ESTABLISHING A "SUBSTANTIAL LIKELIHOOD" OF REDRESSABILITY

The Court also lacks subject matter jurisdiction to grant the Application because the government cannot carry its burden of establishing redressability, as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

required by Article III, section 2.[6] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (party invoking federal jurisdiction bears the burden of establishing standing elements, including redressability). To establish redressability, the government must demonstrate a "substantial likelihood" that its Application, if granted, will provide the requested remedy. *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Ry. Labor Execs. Ass'n v. Dole*, 760 F.2d 1021, 1023 (9th Cir. 1985).

"With a finding of sovereign immunity, there is no longer a redressable controversy . . . [as] [t]here is no injury the Court can redress." *Williams v. Connolly*, No. 17-cv-1631, 2017 WL 5479508, at *10 (D.N.J. Nov. 15, 2017); *accord Berg v. Kingdom of the Netherlands*, No. 2:18-cv-3123, 2020 WL 2829757, at *18-19 (D.S.C. Mar. 6, 2020) (sovereign immunity as to some defendants precludes redressability as to other defendants who claim interest in same property); *cf. Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38, 48-49 (D.D.C. 2019) (if congressional defendants lack immunity under Speech and Debate Clause, "the Court could redress Mr. Trump's harm.").

Even if sovereign immunity does not apply, however, the government still cannot demonstrate a "substantial likelihood" of redressability. The Supreme Court has applied a "steady refusal to endorse standing theories that rest upon speculation about the decisions of independent actors.'" *Dep't of Commerce v. NY*, 139 S. Ct. 2551, 2566 (2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)). Establishing redressability is highly unlikely when the redress "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 615 (1989); *see also*

[6] Although this Court was not persuaded by Claimant' prior argument that it lacked Article III jurisdiction, circumstances in the UK have changed considerably since plaintiff filed its First Amended Complaint. As discussed above, the *res* is now in the possession of the UK government and under the control of a UK court.

*Levine v. Vilsack*, 587 F.3d 986, 995 (9th Cir. 2009) (no redressability because "simply impossible for court to predict" whether third party will take action providing redressability). Thus, "[w]hen traceability and redressability depend on the conduct of a third party not before the court, 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 381 (D.C. Cir. 2020) (quoting *Lujan*, 504 U.S. at 562)). In such situations, the party invoking the court's jurisdiction "must show that the third party will 'act in such manner as to produce causation and permit redressability of injury.'" *Id.*

Courts are "particularly reluctant to find standing where the third party upon whose conduct redressability depends is a foreign sovereign." *Cicero v. Mnuchin*, 857 F.3d 407, 419 (D.C. Cir. 2017). Redressability cannot be established "when the effectiveness of the relief requested depends on the unforeseeable actions of a foreign nation[.]" *Dellums v. U.S. Nuclear Reg. Comm'n*, 863 F.2d 968, 976 (D.C. Cir. 1988), including situations in which "the relief . . . could be obtained only through the consent of the [foreign] government." *Cardenas v. Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984).

Here, the Application seeks seizure of a *res* that is under the possession and control of a UK court, an independent sovereign not answerable to this Court. British law provides a process by which claimants—including the U.S. or other sovereigns—may pursue a claim which may (or may not) ultimately succeed. *See* Lewis Decl. ¶¶ 22-34. As elaborated in Section I, under both customary international law and Supplemental Rule G, the necessity of obtaining the UK court's consent to any seizure of the *res* by the U.S. government means that the government cannot establish a "substantial likelihood" of redressability. The UK court may ultimately recognize a U.S. claim to the *res*, but its decision cannot be predicted or controlled by this Court. *ASARCO*, 490 U.S. at 615. Issuance of an arrest warrant *in rem*, under these circumstances, will not provide the redress the

CLAIMANT'S RESPONSE IN OPPOSITION TO RENEWED *EX PARTE* APPLICATION FOR ARREST
WARRANT *IN REM*                                                     2:20-CV-08466-DSF-PLA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

government seeks, and thus would amount to little more than an advisory opinion prohibited by Article III, section 2. *Carney v. Adams*, 141 S. Ct. 493, 498 (2020); *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020).

## IV.    THE PRIOR EXCLUSIVE JURISDICTION DOCTRINE APPLIES

In addition to limitations on the Court's enforcement jurisdiction, sovereign immunity, and a lack of constitutionally required redressability, the Prior Exclusive Jurisdiction Doctrine also deprives the Court of jurisdiction to issue an arrest warrant *in rem*. *See In re Seizure of Approx. 28 Grams of Marijuana*, 278 F. Supp. 2d at 1108. The PEJ provides "'that when a court of competent jurisdiction has obtained possession, custody or control of particular property, that possession may not be disturbed by any other court.'" *State Engineer of Nev. v. South Fork Band of the Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 809 (9th 2003) (quoting 14 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3631, at 8 (3d ed. 1998)). Application of this doctrine is mandatory in the Ninth Circuit. *Id.* at 810 (PEJ "is no mere discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation.").[7]

In this case, the UK court asserted its jurisdiction over the *res* pursuant to "its power to administer and supervise trusts," and ordered Clyde & Co. to convert the funds from dollars into pounds sterling, and to deposit those monies into its own registry. *See* Lewis Decl. ¶ 4. In addition, that court issued orders requiring that

---

[7] Although PEJ is most often applied between federal and state courts, the doctrine applies equally when the competing court is that of a foreign sovereign. *See Smagin v. Yegiazaryan*, 733 Fed. App'x 393, 397 n.2  (9th Cir. 2018) (noting that the doctrine would not be applied in that case because, although a Liechtenstein court had "first asserted jurisdiction over the" trust in question, the order at issue mandated action in respondent's "*personal* capacity on the basis of the court's in personam jurisdiction."); *see SEC v. Banner Fund Int'l,* 211 F.3d 602, 611 (D.C. Cir. 2000) ("This first-in-time rule has since been applied to federal cases as to which there were cognate proceedings in the courts of another country."); *Dailey v. Nat'l Hockey League*, 987 F.2d 172, 177 (3d Cir. 1993); *Chesley v. Union Carbide Corp.*, 927 F.2d 60 (2d Cir. 1991).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

certain payments be made from those funds. *Id.* ¶ 7. It has, in short, both asserted its jurisdiction and control over the funds and their disposition. As noted above, of course, this order was entered before the government filed the SAC, let alone before an arrest warrant *in rem* was sought. As a result, the Court cannot exercise concurrent jurisdiction over those funds, now subject to the UK court's *in rem* jurisdiction, even if the funds were present in the United States let alone under the control of a foreign sovereign in that sovereign's own territory.[8]

    *In Re Seizure of Approx. 28 Grams of Marijuana*, is instructive here. There, the court issued a 21 U.S.C. § 881 seizure warrant, through which the U.S. Department of Justice took possession of the drugs (marijuana) at issue. The *res* had already been seized by a California state court as evidence in a state criminal prosecution. After pleading to a lesser charge, the criminal defendant, who possessed a "medical marijuana" card, sought return of his marijuana. In the meantime, the DEA secured its warrant, and the marijuana was surrendered by state police authorities.

    The District Court ruled that under the PEJ, it lacked jurisdiction to issue the seizure warrant in the first place, even though there was no competing state forfeiture action pending. It reasoned that "the state court actively asserted jurisdiction over the seized property by adjudicating [the owner's] motion for return of property[,]" and thus, the officers executing the federal warrant "necessarily contravened the orders of a state court disposing of property under its control." *Id.*

---

[8] The UK proceedings are "*in rem*" for PEJ purposes. The March 23, 2021 Order was issued pursuant to Practice Direction 64A-Estates, Trusts and Charities, Title 1 Claims Relating to the Administration of Estates and Trusts, para. 1(2)(a)(ii). This provision allows the UK court to issue "an order requiring a trustee . . . to pay into court money which he holds in that capacity." *See also* Lewis Decl. ¶ 4. Matters of trust administration are *in rem* proceedings. *See, e.g., Princess Lida of Thurn and Taxis, et al. v. Thompson*, 305 U.S. 456, 466 (1939) (noting that PEJ applies both "where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.").

at 1107. This was forbidden by the PEJ. The court ruled that "[t]he lesson of *Penn General* is clearly that federal courts may not interfere with state court *in rem* jurisdiction by forcibly taking possession of the *res*. Under this principle, issuance of a seizure warrant is no less forbidden than commencement of a forfeiture action." *Id.* at 1108.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Claimant requests that the Court deny the Application for an arrest warrant *in rem*.

DATE: April 19, 2021                     Respectfully submitted,


                                                          Baker & Hostetler LLP

                                                          By: /s/ *David B. Rivkin, Jr.*
                                                          SCOTT J. FISHWICK
                                                          DAVID B. RIVKIN, JR.

                                                          *Attorneys for Claimant*
                                                          *PETROSAUDI OIL SERVICES*
                                                          *(VENEZUELA) LTD.*


OF COUNSEL:
Baker & Hostetler LLP
JONATHAN R. BARR
LEE A. CASEY
MARK W. DELAQUIL
ELIZABETH PRICE FOLEY
JONATHAN B. NEW
KENDALL E. WANGSGARD

1

## **CERTIFICATE OF SERVICE**

2   I hereby certify that a true and correct copy of the foregoing and its attachments

3   was electronically filed on April 19, 2021 using the CM/ECF system, thereby

4   sending a notice of electronic filing to all counsel of record.

5                                                          /s/ *David B. Rivkin, Jr.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28