# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br><br>                    v.<br><br>ALL FUNDS HELD IN ESCROW BY CLYDE & CO. IN THE UNITED KINGDOM AS DAMAGES OR RESTITUTION IN PETROSAUDI v. PDVSA UNCITRAL ARBITRATION,<br>          Defendant. | CV 20-8466 DSF (PLAx)<br><br>Order GRANTING Motion to Dismiss (Dkt. No. 61); Order DENYING Ex Parte Application for Arrest Warrant (Dkt. No. 54) |

    Claimant PetroSaudi Oil Services (Venezuela) Ltd. (Claimant) has moved to dismiss the government's second amended civil forfeiture complaint (SAC). The government seeks to forfeit funds formerly held in escrow at Clyde & Company in the United Kingdom that are subject to an arbitration award between Claimant and PDVSA Services S.A. The government has applied for an arrest warrant covering the funds, which are now held in an account of the High Court of England and Wales (UK Court). The UK Court has made orders relating to the funds, including an order releasing certain funds for Claimant's use.

Jurisdiction

    The Court will first address whether it has jurisdiction to consider this forfeiture action.

    There is no question that the Court has statutory subject matter jurisdiction over this forfeiture action despite the UK Court's control

over the res. The Ninth Circuit has interpreted 28 U.S.C. § 1355(b) to mean that "[w]here an act or omission giving rise to the forfeiture occurs in a district, the corresponding district possesses jurisdiction over the forfeiture action regardless of its control over the res." United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets Held by or at Total Aviation Ltd., 513 F.3d 991, 998 (9th Cir. 2008).

The Court again rejects Claimant's Article III jurisdiction argument. There is a case or controversy between the parties over the funds. The only real question is whether the controversy is sufficiently redressable by this Court so that jurisdiction is proper. Though this Court's orders might not have immediate practical effect because the funds are in England and controlled by the UK Court, as noted in the Court's prior order dismissing the First Amended Complaint, circumstances may change and allow the government to enforce any judgment against the funds even if they are currently held in the United Kingdom.

The Court also rejects Claimant's prior exclusive jurisdiction argument.

> The prior exclusive jurisdiction doctrine holds that when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.* Although the doctrine is based at least in part on considerations of comity and prudential policies of avoiding piecemeal litigation, it is no mere discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation.

Chapman v. Deutsche Bank Nat. Tr. Co., 651 F.3d 1039, 1043 (9th Cir. 2011) (internal citations and quotation marks omitted).

Even assuming the primary exclusive jurisdiction doctrine applies in this context, which is by no means clear, under Supreme Court precedent, this Court would have priority over the UK Court because the original complaint in this case was filed before the proceedings in the UK Court and the filing date of the SAC relates back to the original filing date pursuant to Federal Rule of Civil Procedure 15. See Penn

Gen. Cas. Co. v. Commonwealth of Pennsylvania ex rel. Schnader, 294 U.S. 189, 196 (1935) ("[W]hen the two suits have substantially the same purpose and the jurisdiction of the courts is concurrent, that one whose jurisdiction and process are first invoked by the filing of the bill is treated as in constructive possession of the property and as authorized to proceed with the cause. . . . Jurisdiction thus attaches upon the filing of the bill of complaint in court, at least where process subsequently issues in due course."); Fed. R. Civ. P. 15(c).[1]

Sufficiency of the Pleadings

While the Court finds that it has, and should exercise, jurisdiction over this case, the government has again failed to plead sufficient facts to allow the case to move forward.

To survive a motion to dismiss, the SAC must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. Suppl. R. Civ. P. G(2)(f). Issuance of an arrest warrant for the defendant res similarly requires that the government show probable cause to believe the res is subject to forfeiture. Probable cause is sufficient information to convince a "prudent person . . . that there was a fair probability" that the res is subject to forfeiture. United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

The key to establishing a reasonable belief that the government can prevail at trial is whether the government can connect $300 million allegedly taken from 1MDB to the purchase of the *Saturn* drillship whose operations led to the receipt of the funds in question here. The government admits that the vast majority of the $300 million was spent on things other than the *Saturn*. Specifically, of the $185 million of 1MDB funds allegedly transferred to PetroSaudi Oil Services Ltd.

---

[1] The Court does not know how the UK Court would determine priority between the two cases, but under United States law, this case has priority, so under United States law there is no basis to dismiss under the prior exclusive jurisdiction doctrine.

(PSOSL), the government alleges that $166.9 million was allocated to purchase the *Neptune Discoverer* drillship and to guarantee liabilities and obligations on that ship's project. SAC ¶ 1085. This would leave $18.1 million in funds remaining with PSOSL. It is not disputed that the funds at issue in this forfeiture action are not directly derived from the *Neptune Discoverer*'s activities.

The government further admits that a significant amount of the *Saturn* purchase price and project costs were raised through a bond offering. SAC ¶ 1091. However, in the key allegation, the government alleges "on information and belief" that a $13 million portion of the original $185 million was used by PSOSL to partially purchase the *Saturn* on August 18, 2010. SAC ¶ 1090. Taken on its face, this would be sufficient to connect the $300 million to the *Saturn*.[2]

The question then is whether these allegations qualify as "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." The Court finds that they do not.

The key problem is whether there are sufficient allegations to provide a reasonable belief that $13 million of the original $185 million remained with PSOSL long enough so that the partial purchase of the *Saturn* can be traced to the original $185 million that made it to PSOSL. The basis for the government's "information and belief" allegation on this point is that not a terribly long period of time had passed – seven months – and that PSOSL was basically a single purpose entity to hold the drillships and would not have had an excessive amount of outflows not related to purchases of the ships. While this might be plausible – *i.e.*, the government *could* succeed – it is not sufficient to support a reasonable belief that the government *will* succeed. The Court has exceedingly little information as to what

---

[2] Claimant operated the *Saturn* and was the entity with the drilling contract with PDVSA. SAC ¶ 1093. The defendant funds are part of an arbitration award granted to Claimant due to PDVSA's failure to pay its obligations under the contract.

PSOSL's inflows and outflows might have been. PSOSL was engaged in nine-figure oil exploration ventures and could have numerous reasons to spend $18.1 million in seven months, *e.g.*, permits, taxes, salaries, professional services. It is no more plausible that the government will be able to trace the remaining $18.1 million to the *Saturn* purchase than that it will *not* be able to do so.

The government also puts forth a theory that the prior operations of the *Neptune Discoverer*, which is alleged to have been purchased using a large part of the $300 million, were key in the successful bond offering that financed most of the *Saturn* purchase. SAC ¶ 1091. This allegation is based on "information and belief," but the government provides no explanation for why it believes this. But even if there was a sufficient basis to believe that the *Neptune Discoverer* somehow influenced bond investors, the bond argument is obviously a thinner connection than direct use of the funds to purchase the *Saturn*, and the Court is skeptical that it satisfies a plausibility standard let alone the heightened standard of Rule G.

Another fundamental problem the government fails to overcome is that the funds are derived from an arbitral award awarded to Claimant for services *Claimant* provided to PDVSA. While the *Saturn* drillship was used in the provision of those services, Claimant does not, and did not, own the *Saturn*, and any funds potentially traceable to 1MDB are not alleged to have directly passed through Claimant. It seems undeniable that if Claimant were not a PetroSaudi-related entity – for example, if Chevron had leased the *Saturn* for operations in Venezuela – the government would not have any reasonable basis to seek forfeiture of the arbitral award. Yet there are not even plausible allegations that Claimant and PSOSL should be treated as a single entity so that Claimant's assets can be reached as if they belonged to PSOSL. The only allegations relevant to this point are that both Claimant and PSOSL shared Tarek Obaid as a director and signatory on accounts. This leads to the wholly conclusory allegation that PSOSL and Claimant, among others, were co-conspirators in "a conspiracy to fraudulently obtain $1 billion from 1MDB and use a large portion of this money to fund and operate a drilling project in Venezuela . . .

5

acting through OBAID in his capacity as an officer of each of these entities." SAC ¶ 1092.

The motion to dismiss is GRANTED. The ex parte application for an arrest warrant is DENIED. Leave to amend is granted. An amended complaint must be filed no later than July 6, 2021. If an amended complaint is filed, Claimant's response will be due August 3, 2021. A request for issuance of an arrest warrant should not be filed *ex parte* and briefing on the issuance of an arrest warrant should be coordinated with briefing on any motion to dismiss that Claimant might wish to bring.

IT IS SO ORDERED.

Date: June 4, 2021

Dale S. Fischer
United States District Judge