1  Zoe M. Steinberg (CA SBN 324324)
   zsteinberg@bakerlaw.com
2  BAKER & HOSTETLER LLP
   11601 Wilshire Blvd., Ste. 1400
3  Los Angeles, CA 90025
   Telephone:  310.820.8800
4  Facsimile:   310.820.8859

5  David B. Rivkin, Jr. (*pro hac vice*)
   drivkin@bakerlaw.com
6  BAKER & HOSTETLER LLP
   1050 Connecticut Avenue, NW
7  Washington, D.C. 20036
   Telephone:  202.861.1500
8  Facsimile:   202.861.1783

9  (additional counsel listed after caption)

10 *Attorneys for Claimant*
   *PetroSaudi Oil Services (Venezuela) Ltd.*

11

12          **IN THE UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                  **LOS ANGELES DIVISION**

15 UNITED STATES OF AMERICA,        Case No.: 2:20-cv-08466-DSF-PLA
                                    Hon. Dale S. Fischer
16
          Plaintiff,
17                                  **CLAIMANT PETROSAUDI OIL**
     v.                             **SERVICES (VENEZUELA)**
18                                  **LTD.'S OPPOSITION TO**
                                    **APPLICATION FOR ISSUANCE**
19 ALL FUNDS CONSTITUTING           **OF WARRANT FOR ARREST *IN***
   ARBITRATION AWARD IN             ***REM***
20 *PETROSAUDI v. PDVSA* UNCITRAL
   ARBITRATION,
21
          Defendant.
22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  OF COUNSEL:

2  Lee A. Casey (CA SBN 119568)
   lcasey@bakerlaw.com
3  Mark W. DeLaquil
   mdelaquil@bakerlaw.com
4  Jonathan R. Barr (*pro hac vice*)
   jbarr@bakerlaw.com
5  Elizabeth Price Foley (*pro hac vice*)
   efoley@bakerlaw.com
6  Kendall E. Wangsgard
   kwangsgard@bakerlaw.com
7  BAKER & HOSTETLER LLP
   1050 Connecticut Avenue, NW
8  Washington, D.C. 20036
   Telephone:  202.861.1500
9  Facsimile:   202.861.1783

10 Jonathan B. New (*pro hac vice*)
   jnew@bakerlaw.com
11 BAKER & HOSTETLER LLP
   45 Rockefeller Plaza
12 New York, NY 10111
   Telephone:  212.589.4200
13 Facsimile:   212.549.4201

14 *Attorneys for Claimant*
   *PetroSaudi Oil Services (Venezuela) Ltd.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ......................................................................... 1

I.  SUPPLEMENTAL RULE G(3)(b)(ii)'S REQUIREMENT OF
    PROBABLE CAUSE IS NOT SATISFIED HERE ............................ 3

II. THE GOVERNMENT SEEKS AN IMPERMISSIBLE
    WARRANT THAT CANNOT BE SERVED ON THE *RES*
    THE GOVERNMENT SEEKS TO FORFEIT DEFEATING
    THE COURT'S SUBJECT MATTER JURISDICTION OVER
    THAT *RES* ....................................................................... 11

    A.  The Court's Subject Matter Jurisdiction Requires Proper
        and Effective Service of a Warrant of Arrest *in Rem* .............. 12

    B.  The Warrant is Impermissible and Cannot Establish the
        Court's Jurisdiction Over the *Res* Identified in the TAC ........ 18

    C.  The Court Lacks Personal Jurisdiction Sufficient to Issue
        the Requested Warrant .............................................. 21

CONCLUSION ........................................................................ 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*,
  703 F.2d 381 (9th Cir. 1983) ............................................................ 12

*Chrysler Credit Corp. v. Anthony Dodge, Inc.*,
  No. 92 C. 5273, 1996 WL 509888 (N.D. Ill. Sept. 4, 1996) .................... 5

*Matter of Cmty. Home Fin. Servs., Inc.*,
  990 F.3d 422 (5th Cir. 2021) ............................................................ 16

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
  875 F.3d 1241 (9th Cir. 2017) ............................................................ 9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................... 21, 22

*Davy v. Star Packaging Corp.*,
  517 Fed. App'x 874 (11th Cir. 2013) ................................................. 16

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) .............................................................. 5

*Donald J. Trump for President Inc. v. Sec'y of Penn.*,
  830 Fed. App'x 377 (3d Cir. 2020) ...................................................... 5

*Drexel Burnham Lambert Grp., Inc. v. Comm. of Receivers for Galadari*,
  12 F.3d 317 (2d Cir. 1993) .............................................................. 16

*In re Eisen*,
  31 F.3d 1447 (9th Cir. 1994) ............................................................ 16

*Erlenbaugh v. United States*,
  409 U.S. 239 (1972) ....................................................................... 17

*Fabe v. Aneco Reins. Underwriting Ltd.*,
  784 F. Supp. 448 (S.D. Ohio 1991) ................................................... 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

CLAIMANT'S OPPOSITION TO APPLICATION FOR ISSUANCE OF
WARRANT FOR ARREST *IN REM*                    2:20-CV-08466-DSF-PLA

*Fed. Trade Comm'n v. AMG Capital Mgmt., LLC*,
   910 F.3d 417 (9th Cir. 2018) (O'Scannlain, J., concurring) .............................. 17

*Finanz AG Zurich v. Banco Economico S.A.*,
   192 F.3d 240 (2d Cir. 1999) .......................................................... 15

*Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*,
   602 F. Supp. 1378 (S.D.N.Y. 1985) ................................................. 16

*Houston v. United States*,
   217 F. 852 (9th Cir. 1914) *cert. denied*, 238 U.S. 613 (1915) ........................... 10

*Larson v. Abbot Labs.*,
   No. Civ. A. ELH-13-00554, 2013 5937824 (D. Md. Nov 5, 2013) ..................... 5

*Latelle v. Autozoners LLC*,
   No. 2:11-cv-00591, 2012 WL 1315267 (D. Nev. Mar. 27, 2012) .................... 16

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*,
   436 F. Supp. 2d 1095 (C.D. Cal. 2006) .............................................. 16

*One 1958 Plymouth Sedan v. Pennsylvania*,
   380 U.S. 693 (1965) ..................................................................... 19

*Packsys, S.A. DE C.V. v. Exportadora De Sal, S.A.*,
   899 F.3d 1081 (9th Cir. 2018) ........................................................ 18

*Postal Instant Press, Inc. v. Kaswa Corp.*,
   77 Cal. Rptr. 3d 96 (2008) ............................................................. 9

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .................................................... 21, 22

*Reebok Int'l v. McLaughlin*,
   49 F.3d 1387 (9th Cir. 1995) .................................................... 23, 24

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) .................................................................... 15

*Sea Breeze Salt, Inc. v. Mitsubishi Corp.*,
   899 F.3d 1064 (9th Cir. 2018) ........................................................ 15

*Sebastian v. Overstreet*,
   No. 4:06MC56, 2006 WL 3219452 (N.D. Fla. Nov. 6, 2006) ........................... 5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

*In re Seizure of Approx. 28 Grams of Marijuana*,
  278 F. Supp. 2d 1097 (N.D. Cal. 2003)............................................................ 12

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004) .......................................................................... 16

*United States v. $191,910.00 in U.S. Currency*,
  16 F.3d 1051 (9th Cir. 1994) ............................................................................ 20

*United States v. 2,164 Watches*,
  366 F.3d 767 (9th Cir. 2004) ............................................................................ 12

*United States v. 51 Pieces of Real Property in Roswell, N.M.*,
  17 F.3d 1306 (10th Cir. 1994) .......................................................................... 22

*United States v. 5443 Suffield Terrace, Skokie, Ill.*,
  607 F.3d 504 (7th Cir. 2010) .............................................................................. 5

*United States v. Approx. $7,800.00 in U.S. Currency*,
  No. 1:19-CV-00427-NONE-EPG, 2020 WL 773399 (Feb. 18,
  2020) ................................................................................................................. 13

*United States v. Approx. 2,538.85 Shares of Stock Certificates of the
  Ponce Leones Baseball Club, Inc.*,
  988 F.2d 1281 (1st Cir. 1993) .......................................................................... 12

*United States v. Boyce*,
  38 F. Supp. 3d 1135 (C.D. Cal. 2014) *aff'd* 638 Fed. App'x 654
  (9th Cir. 2017) .................................................................................................... 9

*United States v. Clark*,
  31 F.3d 831 (9th Cir. 1994) .............................................................................. 19

*United States v. Crozier*,
  777 F.2d 1376 (9th Cir. 1985) .......................................................................... 19

*United States v. Drebin*,
  557 F.2d 1316 (9th Cir. 1977) .......................................................................... 20

*United States v. Farkas*,
  No. 1:10CR200 LMB, 2011 WL 5101752 (E.D. Va. Oct. 26, 2011) .................. 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*United States v. Funds Representing Proceeds of Drug Trafficking in*
  *the Amount of $75,868.62*,
  52 F. Supp. 2d 1160 (C.D. Cal. 1999) ................................................ 12

*United States v. Green*,
  594 F.2d 1227 (9th Cir. 1979) ............................................................ 10

*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) .............................................................................. 19

*United States v. Kim*,
  806 F.3d 1161 (9th Cir. 2015) .............................................................. 9

*United States v. Leon*,
  468 U.S. 897 (1984) .............................................................................. 3

*United States v. Marolf*,
  173 F.3d 1213 (9th Cir. 1999) ............................................................ 13

*United States v. McLaughlin*,
  565 Fed. App'x 470 (6th Cir. 2014) ................................................. 6, 7

*United States v. Obaid*,
  971 F.3d 1095 (9th Cir. 2020) ................................................. 9, 10, 21

*United States v. One Oil Painting Entitled "Femme*
  *en Blanc" by Pablo Picasso*, 362 F. Supp. 2d 1175 (C.D. Cal.
  2005) .................................................................................................... 22

*United States v. Park*,
  825 F. Supp. 2d 644 (D. Md. 2011) ...................................................... 7

*United States v. Quantity of Extracts, Bottles, etc.*,
  54 F.2d 643 (S.D. Fla. 1931) .............................................................. 20

*United States v. Real Property Located at 475 Martin Lane*,
  298 Fed. App'x 545 (2008) ................................................................. 14

*United States v. Tanke*,
  743 F.3d 1296 (9th Cir. 2014) ............................................................ 10

*United States v. Twenty-Four Thousand Dollars ($24,000) in U.S.*
  *Currency*,
  No. 02:09–CV–2319, 2010 WL 2695637 (D. Nev. July 2, 2010) .................... 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

v

*United States v. Vowiell*,
    869 F.2d 1264 (9th Cir. 1989) ........................................................... 10

*United States v. Warshak*,
    631 F.3d 266 (6th Cir. 2010) ........................................................... 6, 7

*United States v. Wood*,
    No. 3:15-cr-14, 2016 WL 8131221 (E.D. Ky. Oct. 17, 2016) ............ 7

*Velez v. City of Chicago*,
    No. 18 C 8144, 2021 WL 3231726 (N.D. Ill. July 29, 2021) .............. 4

*Ventura Packers, Inc. v. F/V Jeanine Kathleen*,
    424 F.3d 852 (9th Cir. 2005) ........................................................... 12

*Wachovia Bank v. Schmidt*,
    546 U.S. 303 (2006) ......................................................................... 17

*Wady v. Provident Life & Accident Ins. Co. of Am.*,
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) .............................................. 9

*Willess v. United States*,
    560 Fed. App'x 762 (10th Cir. 2014) ................................................ 16

**Statutes**

18 U.S.C. § 981 ...................................................................................... 14

18 U.S.C. § 981(b)(3) ............................................................................. 14

18 U.S.C. § 985(c)(3) ............................................................................. 14

28 U.S.C. § 1355(b) ................................................................. 13, 14, 17, 18

28 U.S.C. § 1355(d) ............................................................................... 13

28 U.S.C. § 1603(b) ............................................................................... 15

Civil Asset Reform Act of 2000, P.L. 106-185, 114 Stat. 202, 213, 215 .............. 14

Foreign Sovereign Immunities Act, 28 U.S.C. § 1604 ....................... 11, 15

**Rules**

Civil Procedure Rules, 1998, S.I. 1998/3132, Pt. 64 (U.K.) ................... 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

Supp. R. G ............................................................................................ *passim*

**Other Authorities**

Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98
    Mich. L. Rev. 547, 601 (1999) ........................................................ 20

U.S. Const. Amend. IV ............................................................................ 19

U.S. Dep't of Justice, Criminal Division *Asset Forfeiture Policy
    Manual 2021* ................................................................................ 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# **INTRODUCTION**

The government's application (the "Application") for an arrest warrant *in rem* fatally relies on a forfeiture complaint that fails to state a claim for relief and seeks to forfeit funds under the control of a British court furnished by a third-party bank, unconnected to the 1MDB allegations, pursuant to the order of an arbitration panel. The government does not dispute that Claimant operated a legitimate business, that the *res* is an arbitral award related to its independent activities and contract with PDVSA, that Claimant never even owned the drillship at issue, and that the funds were furnished under a contractual letter of credit. With the Third Amended Complaint ("TAC"), another stunning admission comes to light: *no* 1MDB funds were involved in the purchase of the *Saturn* drillship whatsoever. The government's prior insistence of such a connection was without a basis in fact. This Court twice dismissed complaints for multiple insurmountable failings: the allegations did not adequately allege either that the escrowed funds are proceeds traceable to one of the statutorily specified offenses or that the funds were involved in a money laundering transaction, *see* ECF No. 52 at 3-4; the Court was "not convinced that money awarded in the arbitration to an entity that is not the joint venture for services legitimately rendered to PDVSA becomes forfeitable just because an attenuated chain of events can be constructed between the original theft and the drillship drilling contract" *id.* at 4; "the government's theory appear[ed] to rely on purely but-for causation" *id.*; and "the government's position on 'facilitating property' [was] also far too broad and not supported by authority, experience, or common sense." *Id.* at 5. Despite amendment, the Court noted that key problems remained: "whether there are sufficient allegations to provide a reasonable belief that $13 million of the original $185 million remained with PSOSL long enough so that the partial purchase of the *Saturn* can be traced to the original $185 million that made it to PSOSL," ECF No. 89 at 4; the bond allegations likely do not satisfy Rule G *id.* at 5; and the "funds are derived from an arbitral award awarded to Claimant

1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for services *Claimant* provided to PDVSA." *Id*. The government's fourth attempt fails to cure these fatal flaws.

Rather than seriously addressing these foundational deficiencies—or any of the other concerns identified by the Court, including that the conspiracy allegations are wholly conclusory—the government again applies for an arrest warrant on the back of a now-too-familiar bloated, rehashed complaint that broadly alleges a massive conspiracy. But such conclusory and generalized allegations cannot establish probable cause to believe the *res* is subject to forfeiture, no matter how vigorously they are repeated. The TAC does not plausibly allege the arbitral award is forfeitable, that Claimant was involved in the alleged misconduct, that corporate separateness should be disregarded, or that Claimant was a co-conspirator in anything. In addition, as framed in the Application, the requested warrant is impermissible since it is not actually directed at the *res* in this case and no specificity is provided. These fatal flaws in the Application defeat the Court's subject matter jurisdiction and render the Application deficient as a matter of law.[1] No warrant should issue.

---

[1] As discussed below, the government asks the Court to issue a warrant that is both unprecedented and impermissible. Any warrant issued by the Court must be served on the *res* whose forfeiture the government seeks in the TAC in order to establish its subject matter jurisdiction over that *res*, but this is impossible because the *res* in issue is in the possession of, and under the control of, an English court in England. That court is a sovereign entity not subject to service of process or any other exercise of jurisdiction by the Court under the Foreign Sovereign Immunities Act. To sidestep this fundamental problem, the government seeks a warrant that would not be served on the *res*, identified in the TAC, but upon funds paid, or that may be paid, from the *res* to private persons pursuant to the English court's orders. Such a warrant does not and cannot serve to assert the Court's jurisdiction over the *res* identified in the TAC that the government seeks to forfeit, is impermissible as a general warrant under the Fourth Amendment, and does not meet the clear specificity requirements of Supplemental Rule G. In fact, the government seeks a warrant that is the equivalent of a § 983(j) order, which cannot be enforced against persons over whom the Court does not have personal jurisdiction under controlling Ninth Circuit precedent. *See, infra*, pp. 21-24.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

## I.   SUPPLEMENTAL RULE G(3)(b)(ii)'S REQUIREMENT OF PROBABLE CAUSE IS NOT SATISFIED HERE

Even if issuance of a warrant directed at presently unidentified portions of funds released by a British court was legally permissible—which as detailed below it is not—no warrant can be issued in this action where probable cause to support forfeiture does not exist. Without question, a warrant application necessitates far more than the rubber stamp sought here. *Cf. United States v. Leon*, 468 U.S. 897, 914 (1984) (noting the importance of neutral and detached determinations). The government, with the present Application, asserts entitlement to a warrant of arrest *in rem* relying almost exclusively on a handful of conclusory allegations tacked on to the same recycled blunderbuss complaint utilized previously. *See* Application at 1 (stating that the Application is "particularly" based merely on paragraphs 1070-1108 of the 300-page TAC).

Where a forfeiture complaint is deficient, it follows that a warrant of arrest *in rem* cannot issue. Thus, this Court has denied prior applications where the operative complaint has failed to state a claim. *See* ECF No. 89. Claimant has again moved to dismiss, *see* ECF No. 94, and for the reasons detailed in that motion, this action (and the Application) cannot proceed. Plainly stated, the TAC fails yet again to overcome the insurmountable roadblocks previously identified by Claimant and the Court. Critically, the TAC still fails to connect the *res*—comprised entirely of funds provided by a third-party bank, unconnected to 1MDB allegations, to satisfy an arbitral award to compensate PSOSVL for its legitimate drilling services—to the alleged conspiracy and money laundering. The government has previously attempted to obscure this foundational failure by arguing "but for" causation, which was rejected by the Court, and by steadfastly and inaccurately arguing that $13 million used to purchase the *Saturn* is money from the 1MDB joint venture. It is now clear beyond argument—mathematical or otherwise—that the $13 million used to buy the *Saturn* is not money from the 1MDB joint venture. In reality, however,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3

because this case is not about whether the *Saturn* is forfeitable, the origin of a mere $13 million of the $260 million used to purchase the *Saturn* has no bearing on the forfeitability of funds paid to PSOSVL for a drilling contract that PSOSVL fulfilled without owning the *Saturn*. As the Court put it, "it seems undeniable that if Claimant were not a PetroSaudi-related entity – for example, if Chevron had leased the *Saturn* for operations in Venezuela – the government would not have any reasonable basis to seek forfeiture of the arbitral award." ECF No. 89 at 5. This has not changed.

In addition to arguing the disconnectedness of the arbitral award to the 1MDB allegations, Claimant previously contended that the government's allegations were insufficient to connect the purchase of the *Saturn* to any money that allegedly flowed from 1MDB. Or, as the Court phrased it, the "key problem" is whether there "are sufficient allegations to provide a reasonable belief that . . . the partial purchase of the *Saturn* can be traced to the original $185 million that made it to PSOSL." ECF No. 89 at 4. After many months—and three prior complaints—the TAC is now unequivocal: there are *no allegations* supporting this proposition.

Specifically, ignoring the fundamental disconnect between the arbitral award and the 1MDB allegations, the government focuses on $300 million invested by 1MDB into the joint venture that, as the Court has noted, was "*not* stolen." ECF No. 52 at 4. Following this investment, the joint venture transferred $185 million to PSI, which, in turn, transferred the same amount to PSOSL. While the government pins its forfeiture theory on the fate of this $185 million, the TAC is clear that not a dime of that money was used to purchase the *Saturn* or to fund performance of the contract that forms the basis of the arbitral award. Indeed, the TAC still fails to connect the *res* at issue to any SUA or money laundering. Thus, an arrest warrant is unjustified.

As courts have observed in a range of contexts, "it cannot too often be repeated or too strongly emphasized that 'saying so doesn't make it so . . . .'" *Velez*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726, at *4 (N.D. Ill. July 29,

2   2021) (quoting *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504,

3   510 (7th Cir. 2010)). Nor does "saying it **repeatedly** make it so." *Dennis v. Kellogg*

4   *Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (emphasis added). *See also Donald J. Trump*

5   *for President Inc. v. Sec'y of Penn.*, 830 Fed. App'x 377, 381 (3d Cir. 2020);

6   *Sebastian v. Overstreet*, No. 4:06MC56, 2006 WL 3219452, at *2 (N.D. Fla. Nov.

7   6, 2006) ("Saying something, even repeatedly, does not make it so."); *Chrysler*

8   *Credit Corp. v. Anthony Dodge, Inc.*, No. 92 C. 5273, 1996 WL 509888, at *3

9   (N.D. Ill. Sept. 4, 1996) ("Saying it is so does not, however, make it so, no matter

10  how many times it is repeated."); *Larson v. Abbot Labs.*, No. Civ. A. ELH-13-

11  00554, 2013 5937824, at *9 (D. Md. Nov 5, 2013) ("Saying it repeatedly does not

12  make it so." (citing Lewis Carroll, *The Hunting of the Snark* 3 (1876) ("I have said

13  it thrice: What I tell you three times is true.")).

14          Eschewing this principle, the government's Application is more of the same:

15  now-familiar but conclusory allegations inconsistent with fraud or conspiracy that

16  simply do not support forfeiture. It is clear that the government's approach to this

17  case is, and has been, one that operates backwards—the government first concluded

18  that it wants to forfeit the independent arbitral award, and then sought to reverse-

19  engineer some set of facts to minimally satisfy its pleading burden. This approach

20  finds support in neither common sense nor forfeiture law and should be rejected.

21  And the Application's re-hashing of the TAC should be rejected. Simply

22  declaring—even repeatedly—that probable cause exists does not satisfy the

23  mandates of Supplemental Rule G.

24          Claimant has already moved to dismiss the TAC, ECF No. 94, therein

25  highlighting the insufficiency of the allegations. The fact that the TAC fails to

26  satisfy the government's pleading standard and Rule G necessarily means that a

27  finding of probable cause to issue an arrest warrant *in rem* is not possible.

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Furthermore, the government's assertion that "any revenues of the Mariscal

2   Sucre project" without limitation, wherever held by anybody in the world, "are

3   forfeitable as proceeds of the conspiracy to defraud 1MDB," Application at 15,

4   seeks an unprecedented extension of existing forfeiture law. In support of this

5   proposition, the government leans heavily on the Sixth Circuit's criminal forfeiture

6   decision in *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010). The

7   government erroneously invokes *Warshak* for the proposition that *all* of the assets

8   and revenues of a business are forfeitable *if* it was at some point funded by *some*

9   illegal conduct, even if the business is engaged in legitimate business activities.

10   However, *Warshak* upheld criminal forfeiture of money generated by a company

11   through legitimate sales because the company's *entire operation* was "permeated

12   by fraud." *Id.* at 332. This basis of forfeitability, as the subsequent decision in

13   *United States v. McLaughlin*, 565 Fed. App'x 470, 477 (6th Cir. 2014) elucidates,

14   extends only to situations where an entire business is fraudulent.

15   That predicate is not even remotely present here. The TAC acknowledges, as

16   it must, that, (i) the *Saturn* drillship and operations were separate and distinct from

17   the *Discoverer* drillship and operations, and (ii) the arbitration award relates solely

18   to services provided by PSOSVL utilizing the *Saturn*. TAC ¶¶ 1103-04.

19   Nevertheless, recognizing that these inconvenient and irrefutable facts are fatal to

20   its forfeiture claims, the government cynically conflates the *Saturn* and the

21   *Discoverer* into a single "Mariscal Sucre" project and ignores the fact that PSOSVL

22   owned neither ship. Moreover, Mariscal Sucre was PDVSA's *own* pre-existing

23   project, orchestrated in accordance with PDVSA's own project plan. Therefore, it is

24   wholly unsupportable and indeed implausible that Mr. Obaid directed or controlled

25   the Mariscal Sucre project. And the "business" proceeds that the government seeks

26   to forfeit are neither of the ships allegedly at issue, nor any other physical *res*

27   allegedly purchased with proceeds of illegal conduct, but instead a separate,

28   contractual award received by PSOSVL, which did not own any vessels, under its

6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   contract with PDVSA. PSOSVL's award is wholly based on an extensive and

2   legitimate business operations, the fact explicitly found to be the case by an

3   arbitration panel, and is thus completely dissimilar from the facts giving rise to

4   *Warshak*. In *McLaughlin*, the Sixth Circuit rejected a similar attempt to invoke

5   *Warshak* because the fraud was discrete and the case did not present a scenario

6   where "the entire operation was permeated with fraud, and that income generated

7   from fraud cycled through [the company's] operations. . . ." *Id*. at 478. *See also*

8   *United States v. Wood*, No. 3:15-cr-14, 2016 WL 8131221, at *2 (E.D. Ky. Oct. 17,

9   2016) (finding unpersuasive and rejecting application of *Warshak* as limited to

10   operations "permeated with fraud" that "remained rotten and malignant").

11       In a similar vein, the government's invocation of *United States v. Farkas*,

12   No. 1:10CR200 LMB, 2011 WL 5101752, at *3 (E.D. Va. Oct. 26, 2011) is

13   likewise unavailing. There can be no plausible allegation that the purchase and

14   operation of the *Saturn* would not have proceeded in the absence of $13 million

15   allegedly raised through the operation of the *Discoverer*, which, in turn, was

16   allegedly purchased with some funds allegedly related to 1MDB. Indeed, the Court

17   previously observed that "even putting those issues aside, it is not clear that the

18   government's 'but for' inference can be fairly drawn from the alleged facts given

19   that there are presumably a number of different ways that PetroSaudi could have

20   funded the drillship investment without 1MDB." ECF No. 52 at 5 n.3. The

21   government has never alleged otherwise or asserted that fraud enabled Claimant to

22   remain in business.[2] This also undercuts the government's citation of *United States*

23   *v. Park*, 825 F. Supp. 2d 644, 648 (D. Md. 2011) which pegged the theory of

24   forfeitability to solvency via illegality. The government's requested overreach is

25   precisely what CAFRA was intended to prevent.

26

27   [2] In the industry, drillship purchases are readily financeable on the basis of their own

28   activities and future revenues. Take for example the *Discoverer* which, under its previous
     owner, was subject to bond-based financing.

The government is also incorrect regarding its treatment of Claimant's innocent owner status. The government insists that "a civil forfeiture Complaint need not negate this defense *at all*," Application at 18, but spends pages echoing the baseless conclusion that PSOSVL did not innocently operate the *Saturn*. *Id.* at 16-19. The assertions and arguments offered by the government in support of this conclusion are unavailing.

First, the government broadly pronounces that Mr. Obaid's knowledge and actions can (and should) be imputed to PSOSVL. Yet, the TAC fails to point to any specific actions that Mr. Obaid supposedly took on behalf of PSOSVL in furtherance any conceivable conspiracy. There is no basis to impute his actions to PSOSVL, such that it could be deemed a culpable actor in the supposedly tainted drilling project.

Second, the government's pejorative attempts to sully Mr. Obaid reveal its true theory. Specifically, the government pronounces him a "bad actor" and Claimant a "captive" company. *See, e.g.,* Application at 18.[3] The government then goes on to assert that "bad actors" should not be able to "avoid" legal consequences through operation of the corporate form. Thus, while the government ostensibly invokes an imputation theory as the foundation of its case, its argument is nothing more than a disguised reverse veil piercing (*alter ego*) theory that is contrary to California law. Under traditional application of *alter ego* theory, **corporate** separateness may be disregarded in order to hold an **owner** liable for corporate actions only when stringent criteria (not even alleged in the TAC, much less

---

[3] The government's "captive company" allegation is found nowhere in the TAC. The government does allege—incorrectly—that Mr. Obaid had "full control" over Claimant, TAC ¶ 1098, "by virtue" of being a "Required Director." In reality, Mr. Obaid never had majority control of the Board, was never an officer of the company, and the Required Director provision was never implicated (all actions having been unanimous). Further, the bylaws clearly required a majority vote on contracts and other significant corporate actions notwithstanding the Required Director provision. The TAC makes no allegations to the contrary or that the provisions that allegedly "could" be used, actually were.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

plausibly pled) are met. *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1249 (9th Cir. 2017) (quoting *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002)) (California law) ("[S]ituations where the 'owner of a corporation will be held liable for the actions of the corporation'" are addressed by "the theory of 'alter ego.'"). Here, the government's *reversal* of this traditional alter-ego concept—seeking to hold the corporation responsible for the alleged actions of the purported owner—runs headlong into California's rejection of "reverse piercing" actions that hold an alter ego corporation liable for the actions of its shareholders.[4] *United States v. Kim*, 806 F.3d 1161, 1168 (9th Cir. 2015). *See also Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96 (2008) ("[R]everse piercing is a radical and problematic change in standard alter ego law."); *United States v. Boyce*, 38 F. Supp. 3d 1135, 1156 (C.D. Cal. 2014) *aff'd* 638 Fed. App'x 654 (9th Cir. 2017). The government's sleight of hand should be rejected.

Finally, the government wholly misconstrues *United States v. Obaid*, 971 F.3d 1095 (9th Cir. 2020) in asserting that acts of spending money are part of a "misappropriation conspiracy." Application at 19. The Ninth Circuit's statement on this point, which is the subject of a pending *certiorari* petition, warrants reproduction in full:

> The threshold inquiry **under section 1355** is whether "sufficient acts . . . giving rise to the forfeiture" took place in the Central District. *$1.67 Million*, 513 F.3d at 996. As alleged, the Palantir shares were purchased using funds traceable to a $700 million transfer to the Good Star Account as part of the 1MDB scheme. **Some of the alleged acts in furtherance of the conspiracy** were conducted in the Central District, including expensive real estate purchases in Beverly Hills, **the financing of a motion picture**, and the purchase of the Palantir shares. Purchasing real estate in Beverly Hills and shares of stock in Palantir

---

[4] Mr. Obaid is not even an owner of Claimant. As the TAC details, during the relevant time he was at most a fifty percent owner of a distant parent entity several layers removed. *See* TAC ¶ 1101.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

are not per se criminal acts. However, **if the purchases were a mechanism to launder proceeds** in furtherance of the 1MDB scheme, "sufficient acts" giving rise to the forfeiture occurred in the Central District, thus making venue proper. *See id*. We thus conclude that the conspiratorial activity in the Central District was **sufficient to support venue** in that district, given "the relatively low standard set forth in section 1355." *Batato*, 833 F.3d at 420.

971 F.3d at 1106 (emphases added). The *Obaid* discussion concerned a question of venue and, then, solely with respect money laundering. There is absolutely nothing to support the bald assertion that "a conspiracy to misappropriate money does not end when the money is first stolen." Application at 19. To the contrary, a conspiracy typically concludes once its object is accomplished. *Cf. Houston v. United States*, 217 F. 852, 859 (9th Cir. 1914) *cert. denied*, 238 U.S. 613 (1915) (A conspiracy to defraud the United States continued until the defendants cashed the government's checks); *United States v. Green*, 594 F.2d 1227, 1229 (9th Cir. 1979) ("If the principal objects of a conspiracy [to steal government property] have been accomplished before an act of concealment, however, then in all but the unusual case the conspiracy has ended before the cover-up begins"); *United States v. Vowiell*, 869 F.2d 1264, 1270 (9th Cir. 1989) (conspiracy to assist escape of prisoners ends once fugitives have passed the point of immediate pursuit); *United States v. Tanke*, 743 F.3d 1296, 1305 (9th Cir. 2014) (stating, in the context of a mail fraud conspiracy that "[t]o determine when a scheme ends, we look to the scope of the scheme as devised by the perpetrator."). The government's desperate pursuit of the manufactured argument that PSOSVL was involved in a conspiracy that allegedly occurred and ended before PSOSVL was even formed is preposterous on its face and unavailing.

!

!

!

10

## II. THE GOVERNMENT SEEKS AN IMPERMISSIBLE WARRANT THAT CANNOT BE SERVED ON THE *RES* THE GOVERNMENT SEEKS TO FORFEIT DEFEATING THE COURT'S SUBJECT MATTER JURISDICTION OVER THAT *RES*

The government is seeking an unprecedented and impermissible warrant to avoid what it knows to be the fundamental legal requirements for the exercise of "*in rem*" jurisdiction in a forfeiture action. The Court's jurisdiction depends upon the successful execution of an arrest warrant *in rem* on the totality of the Defendant Assets since the TAC seeks the forfeiture of the entirety of these assets. That cannot be accomplished here because the Defendant Assets are entirely controlled by the High Court of Justice, Business and Property Courts of England and Wales ("High Court"). That court is the custodian of the funds, but it also is an arm of the British government, entitled to sovereign immunity. It cannot, therefore, be served with an arrest warrant under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604.

As a result, the government seeks a "warrant of arrest *in rem*" that is not actually directed at the *res* in this case—the Defendant Assets—but to portions of that *res* that may be in the future, or have been already, dispersed pursuant to the High Court's orders. The government cannot proceed piecemeal in this fashion. Moreover, no specificity is provided in the arrest warrant as to the particulars of the portions of the *res* that it seeks to arrest and, indeed, insofar as the order is directed at the future disbursements by the High Court, those "portions" of the *res* do not even exist. There is no basis in law for the issuance of such a general warrant in an *in rem* case, nor is such a warrant permissible under the Fourth Amendment. This fatal flaw in the government's arrest warrant application defeats the Court's subject matter jurisdiction and renders the warrant application deficient as matter of law.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### A.  The Court's Subject Matter Jurisdiction Requires Proper and Effective Service of a Warrant of Arrest *in Rem*

The Court's subject matter jurisdiction in an *in rem* forfeiture case depends upon service of a warrant of arrest *in rem* on the *res* as identified in the complaint, in this case the Defendant Assets. *See United States v. 2,164 Watches*, 366 F.3d 767, 771 (9th Cir. 2004) (jurisdiction over the *res* "depends on whether the court has power over the defendant res to enforce a judgment against it. Service of process is the mechanism by which the court acquires this power."). Consequently, "'a failure to serve the warrant on the *res* leaves the court without jurisdiction over the 'defendant' (i.e., the object in dispute).'" *Id.* at 771 (quoting *United States v. Approx. 2,538.85 Shares of Stock Certificates of the Ponce Leones Baseball Club, Inc.*, 988 F.2d 1281, 1287 n. 8 (1st Cir. 1993)); *United States v. Funds Representing Proceeds of Drug Trafficking in the Amount of $75,868.62*, 52 F. Supp. 2d 1160, 1168 (C.D. Cal. 1999) (service of the warrant is "'inarguably jurisdictional.'"). *See also Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983), *implicitly overruled on other grounds*, as stated in *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 859 (9th Cir. 2005) ("Jurisdiction over the *res* is obtained by arrest under process of the court. In absence of an arrest, no decree *in rem* can be rendered against the *res*.").[5] Here, as discussed before, the government does not seek a warrant against the *res*, but against unidentified (and

---

[5] Indeed, the Court must have subject matter jurisdiction to issue the warrant itself. *See In re Seizure of Approx. 28 Grams of Marijuana*, 278 F. Supp. 2d 1097, 1107 (N.D. Cal. 2003) ("A federal court cannot issue warrants in furtherance of proceedings over which there is no federal subject matter jurisdiction."). This "chicken and egg" problem, however, is resolved by the recognition that—once the warrant of arrest *in rem* is executed—the court's subject matter jurisdiction is deemed to have been perfected. *See Proceeds of Drug Trafficking in the Amount of $75,868.62*, 52 F. Supp. 2d at 166 (noting that the question before the court was whether the "subsequent seizure [by service of process] perfected this Court's jurisdiction over the *res*").

even unidentifiable) monies that may, or may not, be released by the High Court in the exercise of its jurisdiction over the Defendant Assets.

Rule G governs civil forfeiture proceedings and requires both that the government secure a warrant of arrest *in rem* and that the warrant be executed. *See* Supp. Rule G(3)(b)(ii) ("the court—on finding probable cause—must issue a warrant to arrest the property if it is not in the government's possession, custody or control and is not subject to a judicial restraining order"); Supp. Rule G(3)(c)(iv) ("[i]f executing a warrant on property outside the United States is required, the warrant may be transmitted to an appropriate authority for serving process where the property is located."). These rules must be strictly applied because of civil forfeiture's very nature. *See United States v. Approx. $7,800.00 in U.S. Currency*, No. 1:19-CV-00427-NONE-EPG, 2020 WL 773399 at *3-4 (Feb. 18, 2020) (noting that forfeiture statutes are "'strictly construed against the government'" and that "'strict adherence to procedural rules is paramount in civil forfeiture proceedings.'") (quoting *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) and *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09–CV–2319, 2010 WL 2695637 at *1 (D. Nev. July 2, 2010)).

Nor can there be any dispute that this requirement was unaffected by the enactment of 28 U.S.C. § 1355(b). The Court has concluded that this provision eliminates any requirement that it have actual or constructive control over the Defendant Assets in order to establish its *in rem* jurisdiction. However, § 1355(b) does not address the question of how that jurisdiction must be asserted and perfected, beyond stating that "[a]ny court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action." 28 U.S.C. § 1355(d). This provision is inapplicable

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

here. Consequently, any argument that § 1355(b) is self-executing, such that its mere invocation is sufficient to establish *in rem* jurisdiction, is without merit.[6]

Indeed, Congress has made clear—in 18 U.S.C. § 981 which itself specifically references § 1355(b)—that issuance and service of an arrest warrant *in rem* are still required under that section. In this regard, section 981 states: "Notwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under section 1355(b) of title 28, and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement."). 18 U.S.C. § 981(b)(3). In addition, where Congress has intended to eliminate the requirement that an arrest warrant *in rem* be served on the defendant property, because some other procedure, *i.e.*, "posting", has been followed, it has said so specifically and unequivocally. *See* 18 U.S.C. § 985(c)(3) ("If real property has been posted in accordance with this subsection, it shall not be necessary for the court to issue an arrest warrant in rem, or to take any action to establish in rem jurisdiction over the property."). Both of these provisions were enacted as part of the Civil Asset Reform Act of 2000, P.L. 106-185, 114 Stat. 202, 213, 215.[7]

---

[6] Similarly, the government's argument, previously advanced, that any arrest warrant *in rem* issued by the Court need only be provided to "an appropriate authority in the foreign country for service under that country's laws," ECF No. 70, at 1, to become effective is incorrect. Supp. Rule G requires that such a warrant be transmitted to "an appropriate authority for *serving process where the property is located*." Supp. R. G(3)(c)(iv) (emphasis added). And, to the extent that service of a warrant of arrest *in rem* is to have any legal effect at all, it must be found in U.S. not English law. On this point, the mutual legal assistance treaty between Britain and the United States is very clear, providing with respect to service that "[s]ervice of any subpoena or other process . . . shall not impose any obligation under the law of the Requested Party [Britain] to comply with it." ECF No. 60-7 at 15, Art. 13.

[7] The unpublished opinion in *United States v. Real Property Located at 475 Martin Lane*, 298 Fed. App'x 545, 549 (2008) does not support a contrary conclusion. To begin with,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Of course, execution of a warrant of arrest *in rem* overseas would ordinarily

2    require its transmission to the appropriate "central authority" in the relevant country

3    (in this case the UK National Crime Agency (NCA)) requesting that the warrant be

4    served on the custodian of the *res* and a return indicating that such service had been

5    accomplished. As noted, however, because the Defendant Assets are possessed and

6    controlled by the High Court in England, they enjoy immunity from service under

7    FSIA which provides unequivocally that a "foreign state shall be immune from the

8    jurisdiction of the courts of the United States . . . ." 28 U.S.C. § 1604. *Accord Saudi*

9    *Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (FSIA deprives federal court of subject

10   matter jurisdiction over any claim against a foreign state); *Sea Breeze Salt, Inc. v.*

11   *Mitsubishi Corp.*, 899 F.3d 1064, 1068 (9th Cir. 2018) (noting that FSIA is

12   "jurisdictional").

13       Federal courts have consistently recognized that, when a sovereign is the real

14   party in interest, the proceeding should be considered as against the sovereign itself

15   under the FSIA. This is true even in the context of *in personam* proceedings against

16   private persons. Thus, by example, when a business has entered liquidation under

17   foreign law, courts have routinely concluded that FSIA dismissal is required

18   because the government-appointed liquidator is an "agency or instrumentality" of

19   the foreign sovereign under the FSIA, 28 U.S.C. § 1603(b), and thus entitled to

20   sovereign immunity, because the liquidator exclusively possesses and controls the

21   business. *See, e.g., Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245

22   (2d Cir. 1999) (parties' assumption that foreign liquidator is "real party in interest"

23   and "agency or instrumentality of a foreign state" under FSIA is "supported by the

24

25   that case is not precedential under applicable Ninth Circuit rules, Circuit Rule 36.3, and
     the panel there relied only on an ambiguous Advisory Committee note to Supplemental

26   Rule G(3)(c)(iv), which in fact simply explains why the rule is phrased broadly and repats

27   the truism that transmission of a warrant to a foreign central authority cannot ensure that it
     will be executed. *See* Supp. R. G(3)(c)(iv), advisory committee's note (2006). Neither the

28   note nor the Rule suggests that execution is not required.

CLAIMANT'S OPPOSITION TO APPLICATION FOR ISSUANCE OF
WARRANT FOR ARREST *IN REM*                                    2:20-CV-08466-DSF-PLA

record"); *Drexel Burnham Lambert Grp., Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 324 (2d Cir. 1993) (district court correctly concluded that Dubai liquidation committee was instrumentality of the Emirate and suit barred by sovereign immunity); *Fabe v. Aneco Reins. Underwriting Ltd*., 784 F. Supp. 448, 450-51 (S.D. Ohio 1991) (suit barred under FSIA because Bermudan liquidator is agency or instrumentality of Bermuda under FSIA); *Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*, 602 F. Supp. 1378, 1382 (S.D.N.Y. 1985) (Hong Kong liquidator is real party in interest).

Given that the FSIA bars *in personam* proceedings against a private defendant when it undergoes liquidation by a sovereign-appointed liquidator, the logic is even more compelling that the FSIA bars *in rem* proceedings against a *res*-defendant that is under the exclusive possession and control of a foreign court. The High Court, unlike a liquidator, is not merely an "agency or instrumentality" of the sovereign, but the *sovereign itself*. Like a liquidator, the High Court exclusively possesses and controls the disposition of the defendant *res*. Moreover, like a liquidator, any claim asserted against the defendant *res* must be presented to the High Court for orderly resolution.

Indeed, in the analogous context of an *in rem* bankruptcy proceeding, the Ninth Circuit and numerous other federal courts hold that a bankruptcy trustee is the real party in interest regarding claims for or against the defendant-*res* (bankruptcy estate). *Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004); *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994); *Matter of Cmty. Home Fin. Servs., Inc.*, 990 F.3d 422, 427 (5th Cir. 2021); *Willess v. United States*, 560 Fed. App'x 762, 764 (10th Cir. 2014); *Davy v. Star Packaging Corp*., 517 Fed. App'x 874, 876 (11th Cir. 2013); *Latelle v. Autozoners LLC*, No. 2:11-cv-00591, 2012 WL 1315267, at *2 (D. Nev. Mar. 27, 2012). *See also Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100 (C.D. Cal. 2006) (trustee is real party in interest under Federal Rule of Civil Procedure Rule 17(a)). Here, much like

16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a bankruptcy trustee, the High Court has taken exclusive possession and control over the *res*. Tellingly, it has done so pursuant to UK's Civil Procedure Rules, Part 64, which governs "Claims Relating to the Administration of Estates and Trusts." Civil Procedure Rules, 1998, S.I. 1998/3132, Pt. 64 (U.K.). Pursuant to Practice Direction 64A, the High Court has broad authority to oversee administration of a trust, including ordering an existing trustee to "pay into court money which he holds in that capacity . . . . ." *Id*. at Practice Direction 64A, ¶ 1(2)(a)(ii). That is what the High Court did here; it ordered the then-existing trustee, Clyde & Co., to "immediately transfer" the *res* into the "Court Funds Office" and declared that "upon the transfer . . . to the Court Funds Office . . . the Defendant [Clyde & Co.] *will cease to be the trustee and escrow manager*" of the *res*. ECF No. 57-1, ¶¶ 1(b), 3 (italics added). Accordingly, an arrest warrant *in rem* cannot be served on the High Court, even though such service is necessary to establish this Court's jurisdiction, because such service is barred by sovereign immunity under the FSIA.

Here it is important to note that nothing in section 1355(b)'s statutory language, nor in its legislative history, suggests that it was intended to displace or modify sovereign immunity established under FSIA. To construe § 1355(b) otherwise would be fundamentally inconsistent with well-established principles governing statutory interpretation of multiple statutes that can be brought to bear upon this same issue or matter. When two statutes bear on the same issue, courts are not to ignore one at the expense of the other. "'[S]tatutes addressing the same subject matter' should be construed *in pari materia*." *Fed. Trade Comm'n v. AMG Capital Mgmt., LLC*, 910 F.3d 417, 433 n.2 (9th Cir. 2018) (O'Scannlain, J., concurring) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315 (2006));  in other words, related statutes should "be construed as if they were one law," *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (quotations and citation omitted), and synthesized accordingly.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The only way in which both section 1355(b) and FSIA can be satisfied here is if a proper British governmental entity confirms to the Court that the immunity accorded to the High Court has been withdrawn in this case. Sovereign immunity can, of course, be waived. But such a waiver must be clear and made by a properly authorized official. *See Packsys, S.A. DE C.V. v. Exportadora De Sal, S.A.*, 899 F.3d 1081, 1093 (9th Cir. 2018). No such waiver has been made in this case.

The government clearly understands the fundamental impediment to the Court's jurisdiction described above, and suggests instead that the Court direct its warrant at "any portions of the Defendant Assets that have been or may be released by the High Court of Justice." *See* Proposed Warrant for Arrest in Rem, ECF 93-1, at 2. But, the defendant *res* here under the TAC is the Defendant Assets, and the Court's jurisdiction depends upon service of a warrant on *that res*. There is no legal basis for proceeding piecemeal in the form of an "arrest warrant" against portions of the *res* that may come into the hands of private persons as a result of the High Court's maintenance orders. Indeed, such an arrest warrant is neither constitutional nor statutorily supportable.[8]

## B. The Warrant is Impermissible and Cannot Establish the Court's Jurisdiction Over the *Res* Identified in the TAC

In order to proceed with this case, the Court must have jurisdiction over the *res* identified in the TAC. It cannot establish its jurisdiction on a piecemeal basis by

---

[8] Significantly, the NCA also appears to understand the impediment to execution of a warrant of arrest *in rem* by service on the High Court. In the First Witness Statement of Jonathan Rainer, submitted earlier in this case, *see* ECF No. 70-2, Mr. Rainer—an NCA Grade 2 Senior Investigations Manager—suggested (incorrectly) that an arrest warrant would not have to be served on the High Court, but could instead be served on the Claimant. *Id.* at 1-2. The warrant, however, as a matter of U.S. law, must be served on the Defendant Assets, which are the defendant in this case, not on their owner. Additionally, it must be noted that Mr. Rainer's unsupported assertion that the High Court holds the *res* in the manner of a bank is incorrect. *See* Further Declaration of the Hon. James Lewis, QC, ECF 80-1, ¶¶ 5, 6-8 (noting that British "courts do not hold funds in a banking capacity" and that that court has exercised its *in rem* jurisdiction over the Defendant Assets as part of its trust supervision authority).

18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

attaching portions of that *res* seriatim. This is made clear in Rule G, which provides for issuance of an arrest warrant for the property, "described . . . with reasonable particularity," in the government's forfeiture complaint and then provides for issuance of an arrest warrant *in rem* to be served *on that property*. Supp. Rule G(2)(c), (3)(b)(ii). Rule G does not provide for issuance of a materially different warrant that does not mirror the complaint and that would be served only on portions of the actual *res*—portions that have not and, at least with regard to future disbursements authorized by the High Court, cannot be identified with any particularity.

The government's proposed warrant does not describe the property to be "seized" by amount, the date it was (or may be) paid from the *res*, the recipients nor the current custodians of these amounts, but only as "portions of the Defendant Assets that have been or may be released by the High Court of Justice." It is not enough for the warrant to authorize the seizure of an inchoate category of materials. This is true under Rule G, and under the Fourth Amendment, which clearly applies to civil forfeiture proceedings. *See United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993) (citing *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696 (1965)). Consequently, like other warrants, a warrant of arrest *in rem* must "particularly describ[e] the . . . persons or things to be seized." U.S. Const. Amend. IV.

Thus, as the Ninth Circuit has consistently held in the criminal context, a warrant authorizing seizure of "evidence of a violation of" a particular statute is overbroad and invalid. Accordingly, in *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985), the court held insufficient a warrant simply identifying "material evidence" of a violation of federal statute: "Here, the warrant is deficient because it is overbroad and does not describe any particular property." *See also, e.g. United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) (holding warrant calling for "fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)"

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

impermissible); *United States v. Drebin*, 557 F.2d 1316, 1322 (9th Cir. 1977) (although "technical precision" is not required, it is "necessary that there be reasonable particularity and certainty as to the identity of the property to be searched for and seized, so that the warrant shall not be a mere roving commission."") (quoting *United States v. Quantity of Extracts, Bottles, etc.*, 54 F.2d 643, 644 (S.D. Fla. 1931)).[9]

Overall, the government asks this Court to issue the equivalent of a "general warrant," which were among the precipitating factors of the American Revolution that the Fourth Amendment was adopted to prohibit. *See* Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 MICH. L. REV. 547, 601 (1999). Under that amendment, and Rule G, the government cannot obtain a warrant that does not describe the property to be seized, as identified in the TAC, with particularity.

In fact, rather than filing individual forfeiture complaints against any portions of the *res* disbursed by the High Court (as might be identified with reasonable particularity), the government seeks here to transform the warrant of arrest *in rem* into the practical equivalent of a § 983(j) order applicable to any person who may come into possession of a portion of the *res*. This is not only procedurally and constitutionally impermissible, but also asks the Court to bind unknown parties over whom it may not have personal jurisdiction.[10]

---

[9] Although the illegal seizure of a *res* does not "immunize" it from for forfeiture in a proper case, *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1063 (9th Cir. 1994), here the question is whether the Court should issue a warrant that, on its face, is insufficient under the Fourth Amendment.

[10] Even assuming that cases permitting courts to issue binding orders to individuals with respect to a *res* are correct, with no means of perfecting that jurisdiction because of the English Court's sovereign immunity, this option is unavailable.

20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C.     The Court Lacks Personal Jurisdiction Sufficient to Issue the Requested Warrant

Whether the government is seeking a warrant or an incognito § 983(j) order, and leaving aside the procedural irregularities this would entail, the Court must still have personal jurisdiction over any person it wishes to bind. Although *United States v. Obaid*, 971 F.3d 1095 (9th Cir. 2020), holds that the Court need not have personal jurisdiction over a Claimant *to adjudicate an in rem dispute*, it does not follow that the Court can issue mandatory orders, including process, absent personal jurisdiction over the person to be bound. Here, the government seeks a warrant that does not specify who will receive copies of the warrant—and thence be bound by it—but as the Defendant Assets are located overseas it is highly likely, if not certain, that some or all of those persons will not be subject to personal jurisdiction in this District, or even in the United States as a whole.

As a matter of constitutionally required Due Process, and where—as here—"general" jurisdiction is lacking, a party must (1) have sufficient minimum contacts with the forum and (2) the case must arise out of or relate to those contacts, before it can be bound by the Court's orders. *See, e.g., Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).[11] And, to the extent that the relevant person is an entity, the contacts of an owner or "parent" cannot be attributed to that entity unless it can be shown to meet the Ninth Circuit's alter ego requirements. *Ranza*, 793 F.3d at 1073 (holding that "the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate.").

This is a high bar to meet. The government must show "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities]

---

[11] In the corporate context, a court may exercise general jurisdiction only where the entity is either organized in the relevant jurisdiction or maintains its principal place of business there. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014).

no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* (internal quotation marks omitted). "This test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.' [citation omitted] Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.* No such contacts have been alleged in the TAC even with respect to PSOSVL, let alone others who may receive disbursements from the *res* in accordance with the High Court's orders.[12]

Moreover, if the Court is to bind a claimant (rather than the defendant *res*) it must also have personal jurisdiction over that claimant. Here, of course, the Claimant's only connection to the forum is filing a claim in this action, as it was required to do in order to protect its property interest in the *res*. This is insufficient. *See United States v. 51 Pieces of Real Property in Roswell, N.M.*, 17 F.3d 1306, 1313 (10th Cir. 1994); *United States v. One Oil Painting Entitled "Femme en Blanc" by Pablo Picasso*, 362 F. Supp. 2d 1175, 1189 (C.D. Cal. 2005) (finding personal jurisdiction over a claimant based on minimum contacts and noting that "[t]he court is not concluding that merely appearing in the *in rem* action is sufficient to establish personal jurisdiction."). The Court cannot, therefore, exercise personal jurisdiction over PSOSVL.[13]

To the extent that the government seeks a warrant applicable to the parties— essentially different foreign law firms that so far have received disbursements in accordance with the High Court's orders for legal services that the High Court concluded were necessary to protect the *res*, all in satisfaction of the High Court's

---

[12] Although the government seeks to impute allegations about Mr. Obaid to PSOSVL, this also is impermissible under California's "reverse piercing" cases. *See, supra*, pp 8-9.

[13] Nor can the Court exercise "general" personal jurisdiction here. PSOSVL is organized in Barbados and has its principal place of business in the Caribbean, outside of the United States. *See Daimler*, 571 U.S. at 139.

22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   trust responsibilities and protective of its jurisdiction—the lack of personal

2   jurisdiction is entirely obvious.[14]

3         And, to the extent that the government seeks a warrant purporting to bind

4   entities and individuals in England who are acting in accordance with the legal

5   orders of the English courts, it is also impermissible. The case closest to the facts of

6   this case is *Reebok Int'l v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995). There, the

7   Ninth Circuit reviewed a contempt order directed at a Luxembourg bank that had

8   transferred certain funds subject to a U.S. "freeze" order. The underlying case

9   involved Reebok's trademark infringement claims against an individual in

10   California. The order had been served on the bank but was never successfully

11   domesticated under Luxembourg's law. *See id.* at 1389. The U.S. district court

12   ultimately held the bank in contempt, imposing a very substantial monetary penalty

13   (approximating the amount transferred).

14         The Ninth Circuit reversed, holding that the district court lacked personal

15   jurisdiction over the bank, based on its complete lack of contacts with the

16   jurisdiction, and because the bank had acted in accord with the law of Luxembourg

17   and the Luxembourg court's order. The Ninth Circuit reasoned that the bank had in

18   no sense "directed" its activities toward the United States. Rather, it found that the

---

19   [14] Stated simply, "specific Department policy applies to the forfeiture of attorneys' fees."

20   U.S. Dep't of Justice, Criminal Division *Asset Forfeiture Policy Manual 2021* at 30. The

21   Justice Manual, § 9-120.000 *et seq.* in turn provides that any action to forfeit attorneys'

22   fees requires the approval of the Assistant Attorney General for the Criminal Division.

23   There is no indication that the government has complied with its own internal mandates here before seeking a warrant applicable to, among other things, funds that the High Court of Justice has dictated be paid to attorneys to ensure ongoing protection of the *res*. This

24   policy is important. Per the Department of Justice, "application of the forfeiture provisions

25   to attorney fees [must] be carefully reviewed" to ensure uniform and fair application. *Id*. § 9-120.100. Although lack of compliance does not create substantive rights for litigants, *id*.

26   § 9-121.010, such an apparently cavalier approach would reinforce that the government is proceeding with disregard for the fact that the High Court has made specific provisions for

27   specific amounts to be paid from the funds under its control consistent with British law,

28   solely for the purpose of paying creditors and legal fees and expenses of Claimant. *See* ECF No. 57-1, March 23, 2021 Order, at 1.

bank "has simply behaved as any rational law-abiding person would. It has obeyed the only law applicable to it—the law of its sovereign. If that can be said to have had an effect in the United States, it still cannot be said that the action was purposefully directed toward the United States." *Id.* at 1394.

As the warrant sought by the government cannot bind the persons who may fall within its ambit, the Court should reject the government's request.

## CONCLUSION

For the foregoing reasons, including the continued deficiency of the operative pleading, Claimant respectfully requests that the Court deny the Application.

DATE: August 17, 2021                    Respectfully submitted,

                                         Baker & Hostetler LLP

                                         By: /s/ *David B. Rivkin, Jr.*
                                         DAVID B. RIVKIN, JR.
                                         ZOE M. STEINBERG

                                         *Attorneys for Claimant*
                                         *PETROSAUDI OIL SERVICES*
                                         *(VENEZUELA) LTD.*

OF COUNSEL:
Baker & Hostetler LLP
LEE A. CASEY
MARK W. DELAQUIL
JONATHAN R. BARR
ELIZABETH PRICE FOLEY
KENDALL E. WANGSGARD
JONATHAN B. NEW

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

24

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed on August 17, 2021 using the CM/ECF system, thereby sending a notice of electronic filing to all counsel of record.

/s/ *David B. Rivkin, Jr.*

CLAIMANT'S OPPOSITION TO APPLICATION FOR ISSUANCE OF
WARRANT FOR ARREST *IN REM*                                           2:20-CV-08466-DSF-PLA

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES