# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>ALL FUNDS CONSTITUTING ARBITRATION AWARD IN PETROSAUDI V. PDVSA UNCITRAL ARBITRATION,<br>    Defendant. | CV 20-8466 DSF (PLAx)<br>    AMENDED<br>Order DENYING Motion to Dismiss Third Amended Complaint; Order GRANTING Application for Issuance of Warrant In Rem (Dkts. 93, 94) |

    Claimant PetroSaudi Oil Services (Venezuela) Ltd. (Claimant) has moved to dismiss the government's third amended civil forfeiture complaint (TAC). The government seeks to forfeit funds formerly held in escrow at Clyde & Company in the United Kingdom that are subject to an arbitration award between Claimant and PDVSA Services S.A. The government has applied for an arrest warrant covering the funds, which are now held in an account of the High Court of England and Wales (UK Court), that might be released by that Court.

Foreign Sovereign Immunities Act and Comity

    In previous motions to dismiss Claimant has made various jurisdictional arguments, which have all been rejected. In its reply, Claimant made a belated argument that this Court has no jurisdiction to arrest the *res* because it is the property of the United Kingdom. The government was granted a surreply to respond to the argument, and Claimant was given an opportunity to respond to that surreply.

First, and most importantly, the government does not technically seek to arrest any property in the possession of the UK Court. The proposed warrant seeks arrest of only those funds that have been released by the UK Court or will be released in the future. The funds remaining with the UK Court would be unaffected. Contrary to Claimant's argument, this is not a "general warrant" – the proposed warrant is clear regarding the funds to which it applies. The warrant describes the generally affected funds – the arbitration award funds held by the UK Court – and orders arrest of "any portions of the Defendant Assets that have been or may be released by the High Court of Justice [i.e., the UK Court]."

Even if the government's warrant application could be viewed as directed towards the UK Court, the Foreign Sovereign Immunities Act (FSIA) does not bar issuance of the warrant.

The FSIA provides a broad sovereign immunity for foreign states in United States courts. This immunity extends to both suits and to "attachment arrest and execution" of the property of a foreign state within the United States. See 28 U.S.C. §§ 1604, 1609. These immunities are subject to various statutory exceptions, none of which is alleged to apply here.

Supported by a declaration from an expert on the law of England, Claimant asserts that the deposit of the funds at issue with the UK Court resulted in legal ownership of the funds being transferred to the UK Court, an arm of the sovereign state of the United Kingdom. For the purposes of this motion at least, the government does not contest this legal opinion, and the Court will accept that the United Kingdom has legal ownership of the *res* in this case.

The FSIA generally blocks two things: (1) in personam suits against sovereign states and (2) "attachment arrest and execution" against the property of a sovereign state located in the United States. There is no dispute that this is not an in personam action against the United Kingdom. The second immunity in the FSIA arguably would bar an in rem action requiring arrest of the relevant property if that property

were held within the United States.[1]  In this case, however, the funds are held by the United Kingdom within the United Kingdom itself.  The FSIA by its explicit terms does not bar attachment or arrest of foreign sovereign owned property outside of the United States, nor does it, by its terms, bar a United States court from issuing an arrest warrant for such property.  Of course, the foreign state may or may not give any significance to an extraterritorial arrest warrant from a United States court, but that is an issue to be dealt with in the relevant foreign state – in this case, the United Kingdom.

The Court is also not persuaded by Claimant's comity argument.  In addition to its rejection of the application of the FSIA, the Court previously rejected Claimant's argument regarding the prior exclusive jurisdiction doctrine.  In this context, the Court sees little role for general notions of "comity" where specific laws and doctrines that defend the same interests as comity do not apply.[2]

Sufficiency of the Complaint

To survive a motion to dismiss, the TAC must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. Suppl. R. Civ. P. G(2)(f). Issuance of an arrest warrant for the defendant *res* similarly requires that the government show probable cause to believe the *res* is subject to forfeiture.  Probable cause is sufficient information to convince a "prudent person . . . that there was a fair probability" that the *res* is subject to forfeiture.  United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

In dismissing the Second Amended Complaint, the Court noted that a critical gap in the government's pleading was the need for a connection between the purchase (and ownership) of the drillship

---

[1] The Court is skeptical of the government's argument that the FSIA does not apply to in rem cases at all but does not need to reach that issue here.

[2] Claimant also raises personal jurisdiction arguments that are precluded by United States v. Obaid, 971 F.3d 1095 (9th Cir. 2020).

*Saturn* and the funds at issue. The *res* funds derived from services provided by a separate company – namely, Claimant – using the *Saturn* pursuant to a lease agreement with the owner of the ship. The Court was skeptical that there was a sufficient connection between the 1MDB fraud scheme (or money laundering related to it) and the purchase of the *Saturn*. In addition, the government failed to explain adequately why funds owed to a third-party that merely leased the *Saturn* should be subject to forfeiture even if the *Saturn* itself was traceable to laundered funds.

The Court finds that – after four tries – the government has stated sufficient facts to support a reasonable belief that it will be able to prevail and established probable cause for arrest of the *res*.

There is no question that the TAC adequately traces the 1MDB funds through to the purchase of the drillship *Neptune Discoverer* by PetroSaudi Oil Services Ltd. (PSOSL) and to PSOSL's guarantees associated with the related drilling project. See TAC ¶¶ 1082-86. The government has now also successfully linked the *Neptune Discoverer* with the *Saturn* by alleging that $13 million in proceeds from the *Neptune Discoverer* project were directly used to purchase the Saturn. TAC ¶¶ 1090-92.

The remaining question is whether the purchase and ownership of the Saturn can be adequately connected to the arbitral award at issue given that the arbitral award is in favor of Claimant, a company that only leased the *Saturn* and was never in direct possession or control of any funds traceable to 1MDB.

The Court finds that the alleged control by Tarek Obaid of both PSOSL and Claimant's accounts is sufficient to allow the case to go forward and an arrest warrant to issue. Claimant argues that the government must show that Obaid, PSOSL, and Claimant are alter egos of each other. However, in the context of money laundering, the Court is not convinced that such a high standard must be met. Even if some corporate formalities might have been observed, among other things, the government has alleged that Obaid established Claimant

for the purpose of receiving proceeds from the *Saturn* drilling project – in place of PSOSL which had been receiving the proceeds – and controlled the accounts of both Claimant and PSOSL. TAC ¶¶ 1096-99. To the degree that Obaid had control of the entities and directed the relationship between them, the fact that Claimant may have, *e.g.*, held board meetings, is not enough to shield proceeds derived from fraudulently obtained funds. One of the hallmarks of money laundering is the interposing of various legally distinct entities within the flow of funds to obscure the origins of those funds and the proceeds derived from them. The important points are that Obaid is alleged to have had control of the accounts of PSOSL and Claimant, is alleged to have had effective control over their actions, and is alleged to have withdrawn enormous amounts of proceeds from the entities into his personal bank accounts. This is not to say that the government is sure to succeed in proving what it needs to prove, but it has alleged sufficient facts to proceed beyond the pleadings. And, in addition to a general defense to the government's claims, Claimant has resort to the "innocent owner" affirmative defense of 18 U.S.C. § 983(d) if it was actually an innocent lessee of the *Saturn* ignorant of the fraudulent source of the funds used to acquire the *Saturn*.

The motion to dismiss is DENIED. The application for an arrest warrant is GRANTED.

IT IS SO ORDERED.

Date: October 14, 2021

_____
Dale S. Fischer
United States District Judge