MARGARET A. MOESER, Chief
Money Laundering and Asset Recovery Section (MLARS)
JONATHAN BAUM, Senior Trial Attorney
BARBARA LEVY, Trial Attorney
JOSHUA L. SOHN, Trial Attorney (CBN: 250105)
Criminal Division
United States Department of Justice
  1400 New York Avenue, N.W., 10th Floor
  Washington, D.C. 20530
  Telephone: (202) 514-1263
  Email: joshua.sohn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cv-8466 DSF (BFMx) |
| Plaintiff, | GOVERNMENT'S MOTION TO STAY |
| v. | Date: March 31, 2025 |
| ALL FUNDS CONSTITUTING ARBITRATION AWARD IN PETROSAUDI V. PDVSA UNCITRAL ARBITRATION, | Time: 1:30 p.m. Ctrm: 7D Before the Honorable District Judge Dale S. Fischer |
| Defendant. | |

## <u>GOVERNMENT'S NOTICE OF MOTION</u>

Plaintiff United States of America ("the Government") respectfully moves to stay this case under 18 U.S.C. § 981(g)(1) and the Court's inherent authority for at least six months. There are two separate grounds for the Government's stay request. First, under 18 U.S.C. § 981(g)(1), the case should be stayed because proceeding with civil discovery would jeopardize a related pending criminal investigation which is being concluded. Second, under the Court's inherent authority, the case should be stayed because Claimant's sole owner and controlling person—Tarek Obaid—was convicted last August in Swiss criminal court of the same wrongful acts underpinning this case. Should his conviction be upheld on appeal, collateral estoppel would apply to the specified unlawful activities ("SUA's") alleged for the money laundering allegations in this case, which

would dramatically narrow the scope of issues that must be litigated in this case. In turn, that would greatly limit discovery in this case. Thus, the interests of judicial efficiency strongly counsel for a stay of this case.

The Government specifically requests a stay of six months, after which the Court could assess whether Obaid's Swiss appeal is complete or nearing completion and make the same assessment as to the Government's criminal investigation. At that time, the stay could be either lifted or extended depending on the status of the Swiss appeal and Government investigation.

The Government's motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the *ex parte* Declaration of Jonathan Baum filed herewith, the official Swiss press release memorializing Obaid's conviction, the docket entries in this case, and such other matters of which the Court may take judicial notice.

Dated: March 2, 2025

Respectfully submitted,

MARGARET A. MOESER
Chief, MLARS

 /s/*Joshua L. Sohn*
JONATHAN BAUM
Senior Trial Attorney, MLARS
BARBARA LEVY
Trial Attorney, MLARS
JOSHUA L. SOHN
Trial Attorney, MLARS

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. This Case Should be Stayed Under 18 U.S.C. § 981(g)(1) to Protect a Pending Criminal Investigation

18 U.S.C. § 981(g)(1) states that "[u]pon the motion of the United States, the court *shall* stay the civil forfeiture case if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." (emphasis added). The central question in determining the propriety of a stay under Section 981(g)(1) is whether discovery in the civil case "will subject the government's criminal investigation to early and broader civil discovery than would otherwise be possible" in the context of a criminal investigation or prosecution. *United States v. One Assortment of 73 Firearms*, 352 F. Supp. 2d 2, 4 (D. Me. 2005). For this reason, the Government is not required to make a particularized showing of prejudice or specific harm. *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1184 (C.D. Cal 2011). Requiring such a showing would result in the very prejudice the statute is designed to prevent. *Id.* The Government need only show that an adverse impact is *likely*, and that showing is made where an agent or government attorney with knowledge of the civil forfeiture case and the ongoing criminal investigation so states in a sworn declaration. *See, e.g., United States v. $1,026,781.61 in United States Currency*, No. CV 09-4381, 2013 WL 4714188, *1 (C.D. Cal. July 29, 2013) (agent declaration); *United States v. Various Vehicles, Funds and Real Properties*, No. 2:11-1528, 2012 WL 4050829, *2 (D.S.C. Sept. 13, 2012) (AUSA declaration). When the Government makes such a showing, the imposition of a stay is "automatic" based on the mandatory language of the statute. *United States v. 3039.375 Pounds of Copper Coins*, No. 1:08-cv-230, 2008 WL 4681779, *1 (W.D.N.C. Oct. 21, 2008).

Under this legal standard, a stay is warranted. The *ex parte* Declaration of Jonathan Baum (filed herewith)[1] details a criminal investigation that is closely

---

[1] Section 981(g)(5) authorizes the Government to submit *ex parte* materials in support of a Section 981(g)(1) stay. *See* 18 U.S.C. § 981(g)(5).

intertwined with this civil forfeiture case. Proceeding with civil discovery would jeopardize that criminal investigation and subject the Government to premature, intrusive discovery regarding that investigation. This is the precise harm that Section 981(g)(1) stays are designed to prevent.

## II. This Case Should be Stayed For Judicial Efficiency Because Affirmance of Obaid's Swiss Conviction Would Dramatically Narrow The Issues In this Case

In addition or in the alternative, the Court should stay this case under its inherent authority to await the decision of the Swiss court regarding Obaid's appeal from his conviction involving the same conduct alleged in this case.

"The district court possesses inherent authority to stay federal proceedings pursuant to its docket management powers. A district court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (internal citations and quotation marks omitted). "Our prior cases have identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Id.* (citations and internal quotation marks omitted). This third factor—which is sometimes addressed first, *see id.*—can be summarized as "judicial efficiency." *Id.*

### A. Judicial Efficiency Weighs Heavily in Favor of a Stay

Here, the "judicial efficiency" factor weighs heavily in favor of a stay. As shown in the official Swiss press release summarizing Obaid's conviction, Obaid was convicted of the same wrongful acts that are alleged as the Specified Unlawful Activities (SUA's) for the money laundering allegations in this civil forfeiture case. Specifically, Obaid was convicted of misrepresenting the oil assets that the PetroSaudi Group would contribute to

2

a Joint Venture with the Malaysian sovereign wealth fund 1MDB—misrepresentations
that induced 1MDB to contribute $1B cash to the Joint Venture. *See* Press Release at 1,
*available at* www.bstger.ch/uploads/2024-08-27_Press_Release_SK.2023.24.pdf. He
was also convicted of embezzling these funds for his own use. *See id.* This is precisely
the same conduct that the Government alleges as creating the SUA's in this case. *See*
Third Amended Complaint ("TAC") (ECF No. 90) at ¶¶ 1070-85.

Thus, should Obaid's Swiss conviction be upheld on appeal, critical facts
underpinning the SUA's in this case would be conclusively proven under collateral
estoppel. *See generally Sluimer v. Verity, Inc.,* 606 F.3d 584, 592 (9th Cir. 2010)
(foreign judgments can give rise to collateral estoppel in U.S. courts). That would greatly
simplify the litigation of this case (including discovery, motion practice and trial)
because the most factually-intensive issue—whether the Government can prove at least
one SUA—would be conclusively decided through collateral estoppel. Notably, the
Ninth Circuit has specifically endorsed stays of a second case when a first case that
could give rise to collateral estoppel is up on appeal. *See Collins v. D.R. Horton, Inc.*,
505 F.3d 874, 882-83 (9th Cir. 2007).

In the recently-filed Rule 26(f) Report (ECF No. 177), Claimant previewed two
reasons why it believes Obaid's Swiss conviction could not give rise to collateral
estoppel in this case. Both reasons fail.

First, Claimant argued that collateral estoppel could not apply because the issues
in the Swiss case and this case are not "identical." ECF No. 177 at 12. This is not true.
As summarized above, the core wrongful conduct found in the Swiss case and alleged in
this case is identical. While the causes of action obviously arise under different laws, that
is irrelevant. Collateral estoppel almost always arises when the causes of action in the
two suits are different, because the same cause of action is not usually litigated twice.
The factual issue of *what Obaid did* is identical in the two suits, and that identity of issue
is what is required for collateral estoppel. *See United States v. Mendoza*, 464 U.S. 154,
158 (1984) ("Under the judicially-developed doctrine of collateral estoppel, once a court

3

has decided an *issue of fact or law* necessary to its judgment, that decision is conclusive in a subsequent suit *based on a different cause of action . . .*) (emphases added).

Second, Claimant argued that collateral estoppel could not apply because the Swiss criminal conviction was entered against Obaid while the Claimant in this case is Obaid's company, PetroSaudi Oil Services (Venezuela) Ltd. According to Claimant, this defeats the requirement that collateral estoppel can only be applied against a party who had an opportunity to defend against the first action. *See* ECF No. 177 at 12 (making this argument). However, Obaid is the 100% owner of Claimant and also Claimant's "Required Director" whose assent is necessary for Claimant to take any corporate actions. *See* TAC at ¶¶ 1098-1101; *see also* Claimant's Answer (ECF No. 172) at ¶¶ 1098-1101 (admitting "that Mr. Obaid was one of three Directors of Claimant, and that at various times, he carried the title of 'Required Director;'" further offering "no response" to TAC's quotation of the 2014 bond prospectus used to solicit funding, which stated that the entire PetroSaudi family was wholly-owned by Obaid). This close relationship between Obaid and Claimant means that a valid final judgment against Obaid would have collateral estoppel effect against Claimant. *See In re Imperial Corp. of Am.*, 92 F.3d 1503, 1506 (9th Cir. 1996) ("This court has held that 'when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other.' Furthermore, '[c]orporate affiliations may be relevant in determining whether two parties are in privity for purposes of issue or claim preclusion.'") (internal citations omitted); *In re Gottheiner,* 703 F.2d 1136, 1139-40 (9th Cir.1983) (defendant in prior suit was wholly owned by defendant in subsequent suit; thus collateral estoppel applied in second suit); *SEC v. Neman*, No. 12-cv-3142, 2015 WL 12745802, at *10 (C.D. Cal. Dec. 8, 2015) ("the public policies underlying the doctrine of collateral estoppel ... support a finding of privity between a close corporation and its sole or controlling stockholder.") (quoting *Gottheiner*, 703 F.2d at 1140); *Stan Lee Media Inc. v. Lee*, No. 2:07-CV-00225, 2012

4

WL 4048871, at *4 (C.D. Cal. Aug. 23, 2012) (noting "the traditional concept of corporation-officer privity" for purposes of preclusion doctrines).

For all these reasons, an affirmance of Obaid's Swiss conviction on appeal would give rise to collateral estoppel as to most of the important factual issues in this case. And that means the interests of judicial efficiency weigh strongly in favor of staying this case until Obaid's Swiss appeal has concluded.

**B. The Government Would Be Prejudiced Were This Case Not Stayed**

The second factor in considering a stay is "the hardship or inequity which a party may suffer in being required to go forward." *In re PG&E*, 100 F.4th at 1085. The Government acknowledges that merely making a litigant go forward with a case does not usually constitute hardship or inequity. *See id.* at 1087. However, this is a case where the Government is the plaintiff and the vast majority of documentary evidence and witnesses are located overseas,[2] thus requiring the Government to make Mutual Legal Assistance (MLA) requests to foreign nations. The MLA process is a sensitive process that imposes significant burdens on foreign sovereigns. As a repeat-player in sending MLA requests, the Government depends on the good faith and reciprocity of foreign sovereigns, and preserving strong MLA relationships is critical to US law enforcement. Making burdensome MLA requests in discovery in a situation where they might actually be unnecessary as a matter of law (because the Government could automatically prove its case through collateral estoppel) may be seen as an unreasonable burden on our treaty partners. Thus, staying this case could eliminate the need for burdensome MLA requests and thereby preserve the Government's goodwill with foreign sovereigns. For this reason, denying a stay would constitute hardship and inequity for the Government.

**C. Claimant Would Not Be Prejudiced by a Stay**

---

[2] For example, the Government would seek evidence from Obaid and likely his co-defendant in the Swiss criminal case, Patrick Mahony, who was a lead officer of the PetroSaudi group. We understand they are both are in Switzerland but Mahony normally resides in the UK, where relevant records may be maintained. The 1MDB officials whom Obaid duped are in Malaysia, as are likely additional relevant documents. Other relevant PetroSaudi officials, such as Richard Haythornthwaite and possibly others, are believed to be in the UK, Buried Hill Energy, the company that *actually* owned the energy assets Obaid claimed for PetroSaudi, is headquartered in the UK and Cyprus.

5

Regarding the final factor, Claimant would not be prejudiced by a stay. As an initial matter, the Defendant funds are being safely and profitably invested by the UK National Crime Agency during the pendency of this case, so there is no concern with waste or dissipation of the funds were this case to be stayed.

In the Rule 26(f) Report, Claimant argued that it would be prejudiced by a stay because "the government has restrained Claimant's ability to access funds that were legitimately earned since 2020. As a result, Claimant has been deprived of the opportunity to draw funds from the arbitral award[3] to pay for its defense in this and other related actions." ECF No. 177 at 12. There are numerous flaws with this argument. First, whether or not a stay is issued, Claimant would not be able to use the Defendant funds to defend against this case. After all, the Court's restraint over the funds would not end unless and until Claimant prevailed in this case, at which point this case would be over. As for other pending cases, such as Obaid's Swiss appeal and Claimant's defense of the arbitration award in the French courts,[4] Claimant's prejudice argument is backwards. If this case were stayed, Claimant would not be expending resources on this case during the stay, which means Claimant could shift its available resources to those other cases. Thus, a stay in this case would *preserve* Claimant's financial resources and *facilitate* Claimant's ability to litigate its other cases.

In any event, the Court should be skeptical of any argument that Claimant needs the Defendant funds to support its pending cases. Back in the Fall of 2021, Claimant told this Court in no uncertain terms that a Protective Order over the funds would be "disastrous" because Claimant would not be able to fund its litigations or business operations without monthly maintenance payments from the funds. *See* ECF No. 112 at 24 ("Claimant (and the *res*) faces extreme hardship should the Motion be granted. In the absence of the mandatory maintenance, Claimant will be unable to fund ongoing legal

---

[3] The Defendant funds comprise an arbitration award issued in favor of Claimant and against the Venezuelan oil company PDVSA.

[4] The Government understands that PDVSA is challenging the arbitration award in the French courts, so Claimant is defending against PDVSA's French court challenge. The Government understands that PDVSA's challenge is currently at the appellate level of the French courts and that briefing is complete, with only oral argument remaining.

proceedings including the attempt to annul the arbitration award . . . Moreover, it will not be able to meet its ordinary business expenses and will face insolvency . . . The government's requested relief, in the most simple of terms, would be disastrous."). But with the benefit of hindsight, it is clear that Claimant's statements were hyperbolic at best. It is now 3+ years after the Court granted a Protective Order to freeze the funds, and Claimant's various litigations have not foundered for lack of funds, nor (to the Government's knowledge) has Claimant faced insolvency. Indeed, Claimant recently retained *three* new law firms to litigate this case, which cuts strongly against any claim of insolvency or lack of funds.

　　　For all these reasons, Claimant's claim of prejudice fails.

## III. CONCLUSION

　　　For the foregoing reasons, the Government respectfully requests that the Court stay this case. The Government specifically requests that the Court stay this case for six months, after which the Government would submit a status report regarding its criminal investigation and Claimant would submit a status report regarding Obaid's Swiss appeal. Based upon these status reports, the Court could decide whether to lift or extend the stay.

Dated: March 2, 2025                  Respectfully submitted,

                                      MARGARET A. MOESER
                                      Chief, MLARS

                                       /s/*Joshua L. Sohn*
                                      JONATHAN BAUM
                                      Senior Trial Attorney, MLARS
                                      BARBARA LEVY
                                      JOSHUA L. SOHN
                                      Trial Attorneys, MLARS

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

7

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I conferred with counsel for Claimant PetroSaudi Oil Services (Venezuela) Ltd. prior to the filing of this motion. The conferral process comprised the parties' serial emails assembling the recently-filed Rule 26(f) Report, in which the Government set forth the bases for this motion and Claimant explained why it would oppose. More specifically, the Government set forth its position in an email of February 13, 2025 and Claimant set forth its position in an email of February 20, 2025. The parties filed the Rule 26(f) Report on February 21, 2025.

/s/*Joshua L. Sohn*
JOSHUA L. SOHN

Attorney for Plaintiff
UNITED STATES OF AMERICA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed a copy of this document (and all attachments) via CM/ECF, which will cause a copy to be served on all counsel of record.

/s/*Joshua L. Sohn*
JOSHUA L. SOHN

Attorney for Plaintiff
UNITED STATES OF AMERICA